**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-7416**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ROGER DALE CHARLES, II,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Bryson City.  Martin K. Reidinger, District Judge.  (2:04-cr-00027-MR-DLH-1; 1:16-cv-00136-MR)

Argued:  May 7, 2019                               Decided:  July 26, 2019

Before WILKINSON and NIEMEYER, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed and remanded by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Senior Judge Duncan joined.

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED

STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

NIEMEYER, Circuit Judge:

The "concurrent sentence doctrine" authorizes a court to leave the validity of one concurrent sentence unreviewed when another is valid and carries the same or greater duration of punishment so long as there is *no substantial possibility* that the unreviewed sentence will adversely affect the defendant or, stated otherwise, so long as it can be foreseen *with reasonable certainty* that the defendant will suffer no adverse collateral consequences by leaving it unreviewed. In this case, we find that this standard is satisfied when the only potential harm to the defendant is grounded on unrealistic speculation.

In 2005, Roger Charles, II, was convicted of possession of more than 50 grams of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On his drug-trafficking offense, he was sentenced to 360 months' imprisonment and 10 years of supervised release, and on his firearm offense he was sentenced to 360 months' imprisonment and 3 years of supervised release, with the two sentences to be served concurrently. Both sentences were enhanced by prior felony convictions. On the drug-trafficking offense, the prior convictions served as the basis for finding Charles to be a career offender under U.S.S.G. § 4B1.1(a), and on the firearm offense, they served as a basis for finding Charles to be an armed career criminal under 18 U.S.C. § 924(e) (the Armed Career Criminal Act ("ACCA")).

Ten years later, after the Supreme Court handed down its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which narrowed the category of offenses that can

3

be used to enhance sentences under ACCA, Charles filed a motion under 28 U.S.C. § 2255 to reduce the sentences for both of his convictions. The district court found Charles's sentence for drug trafficking to be valid and declined to review the sentence for his firearm conviction, applying the concurrent sentence doctrine. The court concluded that leaving the firearm sentence unreviewed would cause Charles no "realistic potential adverse collateral consequence."

On appeal, Charles contends that the district court erred in applying the concurrent sentence doctrine because he would indeed be exposed to the possibility of a collateral consequence if his firearm sentence were not reviewed and reduced. Because the collateral consequence posited by Charles rests on unrealistic speculation, however, we affirm the district court's application of the concurrent sentence doctrine in the circumstances presented to it.

Nonetheless, after the parties filed their briefs in this appeal, Congress enacted the First Step Act of 2018, and Charles now claims that leaving his firearm sentence unreviewed will also have the consequence of denying him relief under that Act. Given this development, we remand to allow the district court, in the first instance, to consider Charles's argument that he is eligible for a reduction of his drug-trafficking sentence under the First Step Act.

I

After Charles was convicted of drug trafficking and the illegal possession of a firearm, the Probation Officer prepared a presentence report finding that Charles was a

career offender under U.S.S.G. § 4B1.1(a) and, for purposes of sentencing on the firearm conviction, an armed career criminal under ACCA, 18 U.S.C. § 924(e). The report based these findings on Charles's prior Florida felony convictions for (1) battery of a law enforcement officer, (2) armed burglary with a deadly weapon, (3) escape, and (4) resisting an officer with violence. As a career offender, the presentence report concluded that Charles was subject to an advisory sentencing range of 360 months' to life imprisonment. And as an armed career criminal, Charles was subject to a mandatory minimum sentence for his firearm conviction of 15 years' imprisonment and a maximum of life imprisonment, *see* 18 U.S.C. § 924(e)(1), which was an enhancement of what would otherwise have been a maximum sentence of 10 years' imprisonment, *see id.* § 924(a)(2).

The district court adopted the presentence report and classified Charles as both a career offender and an armed career criminal. It then sentenced him to 360 months' imprisonment and 10 years of supervised release on the drug-trafficking offense and 360 months' imprisonment and 3 years of supervised release on the firearm offense, with both sentences to run concurrently.

Charles's convictions and sentences were affirmed on direct appeal. *See United States v. Charles*, 195 F. App'x 133 (4th Cir. 2006) (per curiam).

Ten years later, in May 2016, Charles filed a motion under 28 U.S.C. § 2255 to vacate his sentences based on the Supreme Court's decision in *Johnson*, 135 S. Ct. at 2563, which held that the "residual clause" used to define a sentence-enhancing "violent felony" in ACCA was impermissibly vague and therefore that "imposing an increased

5

sentence under [ACCA's] residual clause . . . violate[d] the Constitution's guarantee of due process," and *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016), which made *Johnson* retroactively applicable to cases on collateral review. In his § 2255 motion, Charles argued that because three of his four prior convictions qualified as predicate convictions only under ACCA's residual clause, they were illegally used to enhance his firearm sentence. And by the force of *Johnson*'s reasoning, he also argued that those same offenses could not be used to designate him as a career offender under the Sentencing Guidelines for purposes of enhancing his sentence for drug trafficking.

The district court placed Charles's § 2255 motion in abeyance pending the Supreme Court's decision in *Beckles v. United States*, which ultimately held that "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause," 137 S. Ct. 886, 890 (2017).

Based on *Beckles*, the government filed a motion to dismiss Charles's § 2255 motion. It noted first that after *Beckles*, it was clear that Charles's challenge to his career-offender designation had no merit and that his 360-month sentence on the drug-trafficking offense was therefore valid. Second, it argued with regard to his firearm sentence that even if Charles had been improperly classified as an armed career criminal under ACCA, the court need not address Charles's challenge to that sentence because Charles would still have to serve the valid 360-month sentence on his drug-trafficking conviction and a decision not to review the ACCA enhancement on his firearm conviction would have no adverse collateral consequence.

6

In response to the government's motion, Charles contended that he had been "sentenced to an unconstitutional, over-the-maximum sentence for his [firearm] conviction" and that "[t]he concurrent sentence doctrine [was] inapplicable" because the government had failed to show that he would "suffer no harm" were his ACCA-enhanced sentence allowed to stand. He argued that "leaving [his] ACCA sentence in place [would] carry collateral consequences" by subjecting him to the possibility of a greater sentence for violating the terms of his supervised release. Specifically, he explained that because he was sentenced for his firearm conviction under ACCA, the conviction is classified as a Class A felony, rather than as a Class C felony, and should his supervised release be revoked, this difference in classification could subject him to an additional 3 years of imprisonment for the supervised release violation. *See* 18 U.S.C. §§ 3559(a), 3583(e)(3). While Charles acknowledged that he also had a concurrent 10-year term of supervised release for his drug-trafficking conviction, which is a Class A felony, he argued that he still could "suffer potential adverse consequences from the erroneous classification of his [firearm conviction] as a Class A felony, because a district court [would have] discretion to impose *consecutive* prison terms upon revoking *concurrent* terms of supervised release." (Emphasis added). Based on this possibility, Charles argued that "the government cannot show that [he] [would] suffer no harm by leaving the unconstitutional ACCA sentence in place."

By an opinion and order dated September 1, 2017, the district court granted the government's motion to dismiss Charles's § 2255 motion. First, the court noted that Charles's challenge to his career offender status had been foreclosed by *Beckles* and

7

therefore that his 360-month sentence on the drug-trafficking offense was valid. And second, invoking the concurrent sentence doctrine, the court declined to decide whether Charles's 360-month term of imprisonment for his firearm conviction was invalid under *Johnson* because Charles had been validly sentenced to the same term for his drug-trafficking offense and the two terms of imprisonment were imposed concurrently. As for Charles's argument that he could face adverse collateral consequences should he later commit a serious violation of his supervised release, the court explained that "[w]hile the scenario posed by [Charles] [was] technically *possible*, the factors that would have to line up to support such a result make it implausible." It noted:

> The maximum Guidelines range for the *most serious* violation of supervised release calls for a term of incarceration of 51 to 63 months. *See* U.S.S.G. § 7B1.4(a). In order for that Guidelines range to apply, [Charles] would have to commit a Grade A violation while on supervised release; and that Grade A violation would have to be so serious that the Court would have to upwardly vary in order to impose a sentence of more than 84 months, *i.e.*, an upward variance of at least one-third over the top of the recommended Guidelines range.

The court concluded that "[s]uch a hypothetical scenario is simply too speculative to be considered a realistic potential adverse collateral consequence requiring review of [Charles's] sentence on [the firearm conviction]." It accordingly denied Charles's § 2255 motion and granted the government's motion to dismiss it, but it also issued a certificate of appealability with respect to the sentence on Charles's firearm offense.

II

When sentenced, Charles was given a sentence of 360 months' imprisonment and 10 years of supervised release on his drug-trafficking offense and a concurrent sentence

8

of 360 months' imprisonment and 3 years of supervised release on his firearm offense. Relying on *Johnson*, he challenged the length of his firearm sentence. The district court declined to address his challenge because the sentence for his drug-trafficking offense was valid and, under the concurrent sentence doctrine, it need not address the claimed error in the concurring sentence, as any error was harmless.

Charles contends that the district court erred in taking that position, arguing that he could be adversely affected by his invalid firearm sentence. He hypothesizes that after he serves his 360-month sentence, he could commit a serious violation of his supervised release, thereby implicating the supervised release on two Class A convictions, and that the court could then stack the two maximum 5-year revocation sentences by having them run consecutively, for a total term of 10 years. By contrast, if the sentence for his firearm conviction were corrected, as he argues it should be, the conviction would be reduced from a Class A to a Class C felony, *see* 18 U.S.C. § 3559(a), and the maximum sentence for violating the terms of supervised release on the conviction would then be 2 years, *see id*. § 3583(e)(3). Thus, even if the court were to stack the sentences, he could receive at most 5 years for violating the supervised release on his Class A felony (drug trafficking) and only 2 years for his firearm sentence (a Class C felony), for a total of 7 years. The 7 years would thus be 3 years less than the 10 years that would be possible if his firearm offense were not reviewed.

Agreeing with the government, the district court concluded that the harm that Charles posited was too speculative and remote to undermine the proper harmlessness analysis. It said, "[s]uch a hypothetical scenario is simply too speculative to be

9

considered a realistic potential adverse collateral consequence requiring review of [Charles's] sentence on [his firearm conviction]."

The issue before us thus turns on the proper understanding of the concurrent sentence doctrine and whether, in the circumstances of this case, it allowed the court to leave unreviewed Charles's challenge to his firearm sentence.

At the outset, we note that the concurrent sentence doctrine rests on the same rationale underlying harmless-error review — namely, the recognition that to help promote the overall functioning of our justice system, courts should "conserve judicial resources by . . . cleans[ing] the judicial process of prejudicial error without becoming mired in harmless error." *United States v. Hasting*, 461 U.S. 499, 501 (1983) (citation omitted); *see also Benton v. Maryland*, 395 U.S. 784, 798–99 (1969) (White, J., concurring) (explaining that "[i]n a time of increasingly congested judicial dockets," the concurrent sentence doctrine "is not a rule of convenience to the judge, but rather of fairness to other litigants").

In *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980), we articulated the doctrine as follows:

> The concurrent sentence rule provides that where a defendant receives concurrent sentences on plural counts of an indictment and where the conviction on one count is found to be good, a reviewing court need not pass on the validity of the defendant's conviction on another count. . . . [T]he application of the rule has, though, been restricted to situations where there is *no substantial possibility* that the unreviewed conviction will adversely affect the defendant's right to parole or expose him to a substantial risk of adverse collateral consequences.

10

*Id*. at 931 (emphasis added). In that case, we applied the doctrine after considering whether the unreviewed conviction could affect the defendants' eligibility for parole; their place or conditions of confinement; or their "salient factor score[s]," as would be determined by the Parole Commission. Concluding that the defendants would not suffer any such adverse collateral consequences, we declined to review the merits of one of the defendants' convictions. *See id*. at 932.

*Truong Dinh Hung* has since remained the leading authority for the application of the doctrine in our circuit, although our formulation has sometimes varied in our effort to summarize it. In *United States v. Mumford*, 630 F.2d 1023 (4th Cir. 1980), we cited *Truong Dinh Hung* to rule that, because the defendant in that case "was sentenced to concurrent jail terms on the first five counts of mail fraud" and because there was "no substantial possibility" that one of those convictions would "subject him to adverse collateral consequences," "under the concurrent sentence doctrine it would not be necessary to review the validity of [that] conviction." *Id*. at 1029 n.7. In *United States v. Webster*, 639 F.2d 174 (4th Cir. 1981), we again relied on *Truong Dinh Hung*, albeit with a slightly different formulation of the doctrine. We stated in *Webster* that "[w]e may assume, for the purposes of this case, that under the 'concurrent sentence' doctrine, it is permissible to affirm the convictions without investigating whether they were for some reason erroneous, provided we can *foresee with reasonable certainty* that no adverse collateral consequences will redound to the defendant." *Id*. at 182–83 (emphasis added). In *United States v. Walker*, 677 F.2d 1014 (4th Cir. 1982), we relied on *Truong Dinh Hung* again to articulate the doctrine, stating that "a reviewing court need not pass upon

11

the validity of [a] defendant's conviction for additional counts once it has affirmed his conviction on one count, but only if '*there is no substantial possibility* that the unreviewed conviction will adversely affect the defendant's right to parole or expose him to a substantial risk of adverse collateral consequences.'" *Id.* at 1015 (emphasis added). And in *United States v. Hill*, 859 F.2d 325 (4th Cir. 1988), we relied on *Truong Dinh Hung* to summarize the doctrine, yet more briefly, stating that it provides "that where a defendant is serving concurrent sentences and one conviction is shown to be valid, the court may decline to pass upon the validity of the other conviction. It requires a showing that the defendant will suffer no harm by letting both the valid and unreviewed convictions stand." *Id.* at 326. In short, while some of our language differs, none of our cases indicate that one formulation is wrong or even distinct from any other.

Charles focuses on the different language used in *Truong Dinh Hung* and *Webster* to claim that we should limit application of the rule to those cases in which a court "can foresee with reasonable certainty" that there will be no adverse collateral consequences, as was articulated in *Webster*, 639 F.2d at 183. But when *Webster*'s formulation is rightly analyzed as a summary of *Truong Dinh Hung*'s, there is no meaningful difference between the two, and Charles's entreaty provides him with no meaningful help.

In an effort to describe the proper degree of certainty that harm will not result from an unreviewed sentence or conviction, we stated in *Truong Dinh Hung* that there must be "*no substantial possibility*" *of harm*. And in *Webster*, we stated that there must be a "*reasonable certainty*" *of no harm*. Each articulation of the standard is designed to limit *by a measure* the requirement of "no possibility" or absolute "certainty." Thus, "no

12

possibility" is limited to "no *substantial* possibility," and absolute "certainty" of no harm is limited to "*reasonable* certainty" of no harm. The message conveyed by both formulations is that when we consider future events, there must always be some circumspection that eliminates from the forward-looking analysis unrealistic speculation of adverse collateral consequences. *See Eason v. United States*, 912 F.3d 1122, 1124 (8th Cir. 2019) (recognizing that if "highly speculative adverse collateral consequences" were to bar courts from applying the concurrent sentence doctrine, there would be nothing left to "this useful rule" (cleaned up)). Thus, when determining the potential consequences of leaving a sentence unreviewed, we must not engage in unrealistic speculation about the possibility of future harm.

In view of intervening Supreme Court decisions, however, we must recognize an additional limitation to the concurrent sentence doctrine. Because 18 U.S.C. § 3013 imposes a special monetary assessment for each count of *conviction*, the Court has held that the concurrent sentence doctrine cannot be applied to avoid reaching a defendant's challenge to one of his federal *convictions*, reasoning that the additional punishment of the assessment means that the sentences are not truly concurrent. *See Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam). Moreover, even beyond the existence of a special assessment for each of multiple convictions, the Court has indicated that there are other collateral consequences attaching to unreviewed *convictions* that limit the applicability of the concurrent sentence doctrine. In *Rutledge v. United States*, 517 U.S. 292 (1996), the Court noted:

13

> The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction.

*Id.* at 302 (cleaned up).

Yet, while the concurrent sentence doctrine cannot be applied to avoid reviewing the validity of one of a defendant's *convictions*, the doctrine still has continuing force as a species of harmless-error review where a defendant seeks to challenge the legality of a *sentence* that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration. *See, e.g.*, *Eason*, 912 F.3d at 1123; *In re Williams*, 826 F.3d 1351, 1356–57 (11th Cir. 2016); *United States v. Harris*, 695 F.3d 1125, 1139 (10th Cir. 2012); *United States v. Pierre*, 484 F.3d 75, 88, 90–91 (1st Cir. 2007).

In this case, Charles's conviction and 360-month sentence for drug trafficking is valid, and he does not suggest otherwise on appeal. Rather, he challenges his concurrent 360-month sentence — not his conviction — for illegally possessing a firearm. Thus, given Charles's drug-trafficking sentence, his challenge to his firearm sentence can have no effect on his total term of imprisonment. Likewise, he would still face 10 years of supervised release imposed as part of his drug-trafficking sentence, which is longer than the 3-year term of supervised release that was imposed for his firearm conviction.

Charles argues nonetheless that under an extremely unrealistic hypothetical he has posited, he could be adversely affected if his firearm sentence were not reviewed and

corrected. Specifically, he describes a situation where, after serving a 30-year term of imprisonment and being released from prison when he is nearly 60 years old, he would commit a violation of his supervised release within the first three years of his release — the period during which he would be serving two concurrent terms of supervised release on the two sentences. Moreover, his violation of his supervised release would have to be so serious that the district court would not be satisfied with the Guidelines' recommended sentence of 51 to 63 months' imprisonment for the most serious grade violation, *see* U.S.S.G. § 7B1.4(a), but would decide that it needed to vary upward to impose a total revocation sentence that was *greater* than 84 months' imprisonment, which it could only achieve by stacking near-maximum revocation sentences by imposing them consecutively. By contrast, were Charles to succeed in reducing his firearm sentence, 84 months' imprisonment would be the statutory maximum that he could face for a violation of his supervised release. In short, Charles argues that he is exposed to the risk of serving up to 120 months' imprisonment — two 60-month sentences stacked consecutively — for a future violation of his supervised release, which would be 36 months more than if his firearm sentence were reviewed and reduced.

Such a hypothetical scenario, however, is highly speculative and unrealistic. It would require: (1) that Charles commit a violation of his supervised release; (2) that his violation occur in the 3-year window after his release from prison when he would be serving both release terms; (3) that his violation be extraordinarily serious; (4) that the court find the Guidelines' recommendation of 51 to 63 months' imprisonment for the most serious violation to be insufficient to punish the violation; and (5) that the court find

15

it necessary to issue a variance sentence that would be at least 22 months longer than the highest recommended sentence to reach a sentence in excess of 84 months' imprisonment. Not only is the prospect of all of this happening remote, but, most significantly, Charles's hypothetical could only arise if he were to choose to violate the terms of his supervised release. Thus, his posited adverse effect would be entirely within his ability to avoid. As the Eighth Circuit recently stated in identical circumstances, "[The hypothetical] *could not occur* unless [the defendant] chooses to commit serious violations of law during his future term of supervised release. Thus, the adverse consequences are entirely within [his] control to avoid. Literal application of such speculative consequences, resting upon a supposition of [the defendant's] continued criminality, would effectively bar the application of the concurrent sentence rule." *Eason*, 912 F.3d at 1124 (cleaned up).

In short, we conclude that in the circumstances presented to the district court, it did not abuse its discretion by applying the concurrent sentence doctrine and declining to review Charles's sentence for illegal possession of a firearm.

III

Following the parties' briefing on appeal, however, Congress enacted the First Step Act of 2018, which, among other things, allows district courts to apply the Fair Sentencing Act of 2010 retroactively to sentences for certain crimes committed before August 3, 2010. The Fair Sentencing Act reduced the disparity between sentences for crack cocaine offenses and powder cocaine offenses. In a letter to this court, Charles

noted this development and argued that, as a result, he will suffer a new collateral consequence if we do not review his firearm sentence because leaving that sentence unreviewed will effectively deny him the benefit of the First Step Act. As he reasons, even if he were granted a reduction of his drug-trafficking sentence under the First Step Act, such a reduction would be meaningless because his firearm sentence of 360 months' imprisonment would remain in place, unreviewed.

The government contends that Charles is not eligible for a reduction of his drug-trafficking sentence under the First Step Act and therefore that its enactment "does not undercut the district court's conclusion that no realistic consequence would flow from its decision not to review" Charles's firearm sentence.

We conclude that because the impact of the First Step Act was not considered by the district court, as the Act was enacted after the court ruled, the better course is to remand this case to the district court for it to consider the effect of the Act in the first instance. Should the district court conclude that Charles is eligible for a reduction of his drug-trafficking sentence under the Act and further that such a reduction would be warranted, this remand will enable the court to consider the merits of Charles's § 2255 motion challenging his firearm sentence. *Cf. Benton*, 395 U.S. at 793 (recognizing, in a case in which the defendant had been sentenced to 15 years for burglary and a concurrent sentence of 5 years for larceny, that "should the length of the burglary sentence be reduced to less than five years," the defendant "would then clearly have a right to have his larceny conviction reviewed"). If, on the other hand, the court were to decide not to reduce Charles's sentence for his drug-trafficking offense under the First Step Act, it

could then rely on the concurrent sentence doctrine — as it previously applied the doctrine and as we affirm here — to dismiss Charles's § 2255 motion.

AFFIRMED AND REMANDED