**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7471

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ROBERT BENTON, JR.,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence. Cameron McGowan Currie, Senior District Judge.  (4:97-cr-00866-CMC-1; 4:16-cv-02244-CMC)

Argued:  October 28, 2021                                          Decided:  January 24, 2022

Before MOTZ, KING, and HARRIS, Circuit Judges.

Reversed, vacated, and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:**  Shari Silver Derrow, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.  Michael Rhett DeHart, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  James Wyda, Federal Public Defender, Baltimore, Maryland, Paresh S. Patel, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Peter M. McCoy, Jr., United States Attorney, John C. Potterfield, Assistant United States Attorney, Robert F. Daley, Jr., Assistant United States Attorney,

OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

_____

2

PAMELA HARRIS, Circuit Judge:

Robert Benton, Jr. was convicted of multiple offenses related to firearms, drug distribution, and witness tampering. For one of those offenses, possession of a firearm by a convicted felon, 18 U.S.C. § 922(g), Benton was sentenced to 30 years' imprisonment under the Armed Career Criminal Act, which applies when a defendant has three or more prior convictions for a "violent felony" or "serious drug offense," 18 U.S.C. § 924(e)(1). Benton filed a 28 U.S.C. § 2255 motion seeking to vacate his sentence, arguing that in light of intervening Supreme Court decisions narrowing the definition of "violent felony," he no longer has three qualifying predicate convictions. The district court denied relief.

We agree with Benton that his § 922(g) sentence cannot stand. To find that he still qualified as an armed career criminal, the district court relied on prior convictions that were not identified as predicates in Benton's presentence report and of which he had no notice at sentencing. That is contrary to our decision in *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018). Accordingly, we reverse the decision of the district court, vacate the § 922(g) sentence, and remand for resentencing.

I.

Benton was indicted in 1998 on a total of six charges. The one directly at issue here – Count Four – charged Benton with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Three others – Counts One through Three – charged him with offenses related to possession and distribution of cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Finally, Benton was charged in Count

3

Five with attempting to kill a witness to prevent his testimony under 18 U.S.C. § 1512(a)(1) and (2), and in Count Six with using and carrying firearms in relation to a crime of violence under 18 U.S.C. § 924(c).

Benton pleaded guilty to two counts and was convicted by a jury of the other four. The court initially sentenced Benton to life imprisonment, but later made certain reductions to his sentence, and Benton now is serving a total term of imprisonment of 420 months. On Count Four's felon-in-possession conviction, his sentence is 360 months, served concurrently with two other 360-month sentences on Counts One and Three. On the remaining counts, Benton is serving two additional concurrent sentences of 240 months (Counts Two and Five), and one of 60 months (Count Six) run consecutively to those terms.

At issue here is Benton's sentence of 360 months – or 30 years – on his § 922(g) conviction for possession of a firearm by a felon. Ordinarily, the maximum term of imprisonment for a § 922(g) violation is ten years. *See* 18 U.S.C. § 924(a)(2). But the district court sentenced Benton under the Armed Career Criminal Act ("ACCA"), which provides for a minimum term of 15 years' imprisonment for § 922(g) violations and allows for a maximum term of life. *See* 18 U.S.C. § 924(e)(1).

The ACCA's enhanced penalties apply to defendants with at least three previous convictions for a "violent felony" or "serious drug offense," "committed on occasions different from one another." *Id.* Benton's presentence report ("PSR") identified four predicate felonies: aggravated assault and battery (now known as assault and battery of a high and aggravated nature, or "ABHAN"), on October 12, 1987; assault and battery with intent to kill ("ABIK"), on September 5, 1989; involuntary manslaughter, on September

4

14, 1991; and distribution of crack cocaine, on September 13, 1991. At sentencing, Benton did not challenge his armed career criminal designation, and the district court sentenced him accordingly, imposing a term of life imprisonment on the § 922(g) conviction. The court later reduced that sentence to 360 months, pursuant to retroactive amendments to the Sentencing Guidelines.

In 2015, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591 (2015), which substantially narrowed the ACCA's definition of "violent felony."[1] In 2016, this court granted Benton permission to file a successive § 2255 motion in light of *Johnson*, arguing that two of the four predicate felonies identified in his PSR – ABHAN and involuntary manslaughter – no longer qualify as "violent felonies" under the ACCA, leaving him without the requisite three predicates for an ACCA enhancement.

The district court denied relief. The government conceded, and the district court agreed, that the two predicates Benton identified no longer qualify categorically as "violent felonies" under the ACCA. But the other two predicates in the PSR, the court concluded, do qualify: ABIK remains a "violent felony," even under *Johnson*'s narrowed definition,[2] and distribution of crack cocaine is a "serious drug offense."

---

[1] In *Johnson*, the Supreme Court held that the so-called "residual clause" in the ACCA's definition of "violent felony" was void for vagueness and thus could not be the basis for an ACCA designation. 576 U.S. at 597. In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson* applies retroactively to cases on collateral review, like Benton's.

[2] On appeal, Benton does not challenge the district court's determination that his ABIK conviction is a "violent felony" for ACCA purposes.

By themselves, those two predicates would be insufficient to support an ACCA enhancement, which, as noted above, requires three prior qualifying convictions. But critically, the district court agreed with the government that the September 13, 1991, drug arrest identified in the PSR actually could be counted as four separate predicate offenses. To reach that result, the court relied on the criminal history section of Benton's PSR, which contained additional detail about his September 13, 1991, arrest and indicated that Benton ultimately was convicted of four counts of distribution of crack cocaine. Then, because ACCA predicate offenses must have been "committed on occasions different from one another," *see* 18 U.S.C. § 924(e)(1), the district court proceeded to analyze whether these four convictions, all stemming from a single arrest, nevertheless constituted "separate and distinct criminal episode[s]." *See* J.A. 184 (quoting *United States v. Letterlough*, 63 F.3d 332, 334 (4th Cir. 1995)). Applying the five-factor test set out in *United States v. Linney*, 819 F.3d 747 (4th Cir. 2016), the court concluded that they did, relying chiefly on the fact that the offenses occurred on different days spread over multiple months.

In sum, Benton correctly argued that two of the four predicates identified in his PSR no longer qualified as "violent felonies" under the ACCA, which requires three. But after accounting for the remaining ABIK "violent felony" and now the four separate "serious drug offenses," Benton remained subject to the ACCA and its enhanced penalties. Accordingly, the district court denied Benton's motion to vacate his sentence.

Benton timely appealed the denial of his § 2255 motion. We granted a certificate of appealability on whether the district court relied improperly on predicates identified for the first time on collateral review when it sentenced Benton under the ACCA.

6

## II.

### A.

In *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018), we held that the government cannot rely on collateral review on ACCA predicates that were not identified at sentencing, in order to preserve an enhancement that no longer can be sustained by the original predicates.   Benton has one argument on appeal:   that under *Hodge*, it was improper in these collateral proceedings to treat as four separate predicates the September 13, 1991, drug arrest listed as a single predicate in his PSR.  As the parties agree, we review this question de novo.  *United States v. Al-Muwwakkil*, 983 F.3d 748, 754 (4th Cir. 2020).[3] We conclude that there was a *Hodge* violation, and we vacate Benton's § 922(g) sentence and remand for resentencing.

We begin with the *Hodge* case, which controls the outcome here.  In *Hodge*, we held that "the Government must identify all convictions it wishes to use to support a defendant's ACCA sentence at the time of sentencing."  902 F.3d at 430.  Like Benton, Hodge filed a § 2255 motion to vacate his ACCA sentence after the Supreme Court's

---

[3] It appears that neither Benton nor the government brought *Hodge* to the attention of the district court.  The government, however, is not arguing that Benton has waived this issue or that we should review for plain error.  In fact, it takes the affirmative position that our review should be de novo.  As a result, Benton has had no opportunity to argue that he can meet the plain error standard.   Under those circumstances, and in light of the government's own failure to raise *Hodge* before the district court, we exercise our discretion to forgive any forfeiture and review the question de novo.  *See United States v. Ashford*, 718 F.3d 377, 380–81 (4th Cir. 2013).

decision in *Johnson*. His original PSR identified three ACCA predicates. On collateral review, one of those predicates was disqualified, and the government for the first time pointed to an additional conviction, noted in the criminal history section of Hodge's PSR, as support for the enhancement. We held that this substitution was impermissible. Defendants have a right to "adequate notice" of the predicates the government intends to rely on to support an enhancement and the opportunity to contest them at sentencing. *Id.* at 427. And that notice and opportunity are absent, we reasoned, "[w]here the PSR specifically designates certain convictions as ACCA predicates and declines to designate others." *Id.* Under those circumstances, a defendant has been "notifie[d]" that he need not challenge additional convictions, even those that otherwise appear in his PSR. *Id.* Indeed, it might be unwise to do so, "flagging potential predicates" that the government had not contemplated. *Id.* at 428.

Moreover, we explained, raising new predicates for the first time in collateral proceedings deprives a defendant of the opportunity to make his case under the appropriate burden of proof. At sentencing, the government bears the burden of proving that the defendant has three prior ACCA-qualifying convictions committed on different occasions, but in collateral proceedings, the burden shifts to the defendant, who must prove that contemplated convictions do not qualify under the ACCA. *See id.* at 429–30 (citing *United States v. Pettiford*, 612 F.3d 270, 277–78 (4th Cir. 2010)). That shift further disadvantages a defendant forced to contest a predicate for the first time in collateral proceedings, "unfairly depriving [him] of an adequate opportunity to respond." *Id.* at 429 (internal quotation marks omitted).

8

*Hodge* and its reasoning apply straightforwardly here. Benton's PSR specifically designated four ACCA predicates, listing the September 13, 1991, drug arrest as a single predicate conviction. It is true, as the government argues, that the additional convictions it seeks to rely on now can be found in the criminal history section of Benton's PSR. But that was true in *Hodge*, as well, and the very point of our decision in that case: When the government "chooses to specify *which* of the convictions listed in the PSR it is using to support an ACCA enhancement," it narrows the range of "potential ACCA predicates from all convictions listed in the PSR to those convictions specifically identified as such." *Id.* at 428 (emphasis added). Just as in *Hodge*, the "apparently intentional exclusion of some convictions" left Benton without notice that the government later might use those same convictions to support an ACCA enhancement. *Id.* And lacking such notice, Benton had no reason at sentencing to argue – and perhaps good reason *not* to argue – that the overlooked convictions might qualify as four separate predicate offenses. *See id.*

The government also suggests that enforcing Benton's right to notice in this case would be an empty formality. We disagree. The number of predicate offenses arising from an arrest is an important component of adequate notice. A single arrest that leads to multiple convictions is likely to implicate the ACCA's requirement that predicate offenses be "committed on occasions different from one another," *see* 18 U.S.C. § 924(e)(1) – a requirement that often entails a factually and legally complex analysis, *see Linney*, 819 F.3d at 751 (setting out five-factor inquiry). Indeed, the district court here found that the four convictions listed in the PSR's criminal history section constituted separate offenses only after a thorough examination of *Shepard* documents and application of our multi-

9

factored test.  Under *Hodge*, that crucial inquiry should have taken place at sentencing, not on collateral review:  Benton is entitled to an opportunity to argue against ACCA predicates "at the time of *sentencing*," when the government bears the burden of showing that a single arrest is for separate and distinct criminal offenses.  *See* 902 F.3d at 430 (emphasis added).

The government, in short, has offered no meaningful ground for distinguishing *Hodge* from this case.  Instead, it contends that *Hodge* was wrongly decided, candidly advising that we have erred and "respectfully preserv[ing] its objection to *Hodge*." Appellee's Br. at 16 n.3.  We are not sure what objection the government has in mind:  In a prior and virtually identical case from the same district, the government readily conceded *Hodge* error and agreed to a remand for resentencing, *see United States v. Brisbane*, No. 17-6763 (4th Cir. Dec. 10, 2018) (unpublished order), and it provides no reason for the apparent change of heart.  In any event, of course, *Hodge* is binding precedent, regardless of the government's objection, and its application compels the conclusion that there has been a *Hodge* error in this case.

## B.

The government does have one fallback argument:  Notwithstanding the *Hodge* error, the government contends, under the concurrent sentence doctrine, we need not review Benton's § 922(g) sentence.  As described above, along with his 360-month sentence under § 922(g), Benton is serving two other concurrent 360-month sentences, for his convictions on Counts One and Three.  As a result, the government reasons, a reduction in Benton's § 922(g) sentence could have no effect on his overall sentence, so no purpose is served by reviewing that sentence on appeal.  We disagree.

10

The concurrent sentence doctrine "authorizes a court to leave the validity of one concurrent sentence unreviewed when another is valid and carries the same or greater duration of punishment so long as there is *no substantial possibility* that the unreviewed sentence will adversely affect the defendant." *United States v. Charles*, 932 F.3d 153, 155 (4th Cir. 2019). This doctrine gives courts the discretion, in the interest of judicial economy, to forgo review when correction of a sentencing error will not affect a defendant's overall sentence. *Id.* at 158–59. But we have recognized an important caveat: A court may not decline to review a sentence where the defendant may suffer adverse collateral consequences if the sentence is left unreviewed. *Id.* at 155.

We applied that limitation in *Charles*, a collateral-review case in which a district court invoked the doctrine to forgo review of one of two concurrent sentences of equal length. *Id.* While the appeal was pending, Congress enacted the First Step Act, which appeared to make the defendant eligible for a reduction to his concurrent sentence. As a result, we concluded, there was a "realistic potential," *id.*, that leaving the challenged sentence unreviewed would impose an adverse consequence on the defendant, depriving him of the benefit of a First Step Act reduction. We thus remanded the case for the district court to reconsider its decision. *Id.* at 160–62.

For the same reason, we cannot apply the concurrent sentence doctrine in this case. It appears that Benton may be eligible for First Step Act relief on Counts One and Three, the only two concurrent sentences he is serving that are equal to or greater than his § 922(g) sentence. *See United States v. Gravatt*, 953 F.3d 258, 262–64 (4th Cir. 2020) (stating that inmates serving sentences for offenses like Benton's involving cocaine base are eligible

11

for relief under the First Step Act). Just as in *Charles*, if we were to leave Benton's § 922(g) sentence unreviewed, he could be denied any effective benefit from a First Step Act sentence reduction on Counts One and Three.

And in any event, the concurrent sentence doctrine is purely discretionary, *see Benton v. Maryland*, 395 U.S. 784, 791 (1969), and there are other good reasons not to apply it here. *See United States v. Buchanan*, 638 F.3d 448, 450 n.2 (4th Cir. 2011) ("exercis[ing] our discretion to decide the appeal on the merits" despite concurrent sentences). The purpose of the doctrine is to conserve judicial resources when there is nothing to be gained from their expenditure, and accordingly, courts usually invoke it in deciding whether to review a sentence in the first instance. *See, e.g.*, *United States v. Parker*, 801 F. App'x 125, 126 (4th Cir. 2020). Here, however, that ship has sailed: The government failed to raise the concurrent sentence doctrine before the district court, and so the district court already has ruled on the validity of the concurrent § 922(g) sentence. Under these circumstances, even if we could forgo review under the concurrent sentence doctrine, we would decline the government's invitation to let this error stand.

## III.

For the foregoing reasons, we reverse the district court's order denying Benton's § 2255 motion, vacate his § 922(g) sentence, and remand for resentencing.

*REVERSED, VACATED, AND REMANDED*

12