# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

Nos. 24-3314 and 24-3315

UNITED STATES OF AMERICA

v.

CHRISTOPHER TEXIDOR
a/k/a Fats,
*Appellant*

---

Appeal from the U.S. District Court, M.D.Pa.
Judge Jennifer P. Wilson
Nos. 1:20-cr-00286-001 & 1:23-cr-00052-002

Before: Porter, Freeman, and Chung, *Circuit Judges*
Argued: Oct. 22, 2025
Decided: Jan. 8, 2026

---

OPINION OF THE COURT

CHUNG, *Circuit Judge*. After a six-day trial, a jury convicted Christopher Texidor of various drug and firearm offenses. In a separate case, Texidor pleaded guilty to one count of wire fraud. Texidor was sentenced on both cases to an aggregate term of imprisonment of 292 months on the drug and firearm

offenses and a concurrent term of 240 months' imprisonment on the wire fraud case. Texidor argues that the District Court abused its discretion in failing to strike certain portions of the Presentence Investigation Report ("PSR"); committed clear error by applying a four-level leadership enhancement when calculating his advisory range of imprisonment per the United States Sentencing Guidelines ("Guidelines" or U.S.S.G.); abused its discretion by imposing an aggregate sentence of 292 months' imprisonment for his conspiracy to distribute marijuana conviction; and abused its discretion by imposing a concurrent sentence of 240 months' imprisonment for his wire fraud conviction. We will affirm.

## I. BACKGROUND

On November 4, 2020, Christopher Texidor and five co-defendants were indicted on multiple counts relating to their conduct as part of a drug trafficking organization in conspiring to traffic nearly 3,000 kilograms of marijuana from California to Pennsylvania through the United States Postal Service. The organization used Texidor's business, Fastlane Auto Sales, LLC, as a cover for its operation and his residence as a physical base to facilitate their activities. Intercepted phone calls captured regular communications between (1) Texidor and family members and friends whom he had enlisted to receive parcels on behalf of the organization; (2) Texidor and drug customers; and (3) Texidor and other co-conspirators, in which Texidor discussed drop-offs and pickups of marijuana shipments, sales, debts, payments due, and the location of

various parcel shipments. Texidor and his co-conspirators also established an account with Stamps.com to facilitate their shipments.

In the fall of 2019, Texidor, along with other members of the organization, observed that certain parcels were going missing. Texidor and three of the co-conspirators implemented a GPS tracking system for the parcels. Through the tracking system, they eventually uncovered the identity and residence of the person stealing the parcels, a postal employee named D.H. Texidor and others then agreed to hire gunmen to intimidate and threaten D.H. to stop him from stealing their shipments. The gunmen conducted a drive-by shooting of D.H.'s vehicle and reported to Texidor afterwards, leaving the vehicle they used at Texidor's home. Texidor later hid the vehicle at his uncle's residence. In the ensuing days, another shooter conducted a drive-by shooting at a residence where D.H. had been observed to stay. This was followed by a drive-by shooting at a different residence. A few months later, two masked men followed D.H. to a third residence and approached him while brandishing firearms. D.H. ran, and the conspirators took his truck, which contained a concealed firearm and marijuana D.H. had taken from the post office earlier that morning.

In May 2020, investigators executed a series of search warrants at various locations affiliated with the group, including Fastlane Auto Sales and Texidor's residence. At the Fast Lane Auto Sales location, law enforcement officers found

marijuana, GPS tracking devices, a money counter, a vacuum sealer, and mailing labels, consistent with parcels intercepted by investigators. A0811–0816. Their search of Texidor's residence resulted in the recovery of $17,000 in a seat cushion, two pistols registered to Texidor, GPS tracking devices, marijuana, a vacuum sealer, and a digital scale.

On March 16, 2023, Texidor was charged in a superseding indictment with multiple counts relating to his conspiring to distribute, and distributing, marijuana; conspiring to distribute cocaine; conspiring to use a firearm in furtherance of drug trafficking; and possessing a firearm in furtherance of drug trafficking. After a 6-day jury trial, the jury convicted Texidor on all counts except for the cocaine charge and the latter firearm charge.

Texidor was also charged under a separate indictment with three counts relating to his participation in a scheme to defraud the United States Small Business Administration's Paycheck Protection Program (PPP). With respect to that scheme, on May 3, 2021, while on pretrial release for his drug trafficking charges, Texidor and others submitted applications containing false representations to a third-party lender seeking funds from the PPP program. As a result, Texidor and the other participants each received approximately $20,000 in PPP loans. Following his conviction at trial for the drug trafficking offenses, Texidor pleaded guilty to one count of wire fraud. The other charges were dismissed.

4

Texidor's drug trafficking and wire fraud convictions were considered together for sentencing purposes. The District Court calculated Texidor's Guidelines range at 292 to 365 months after finding a total offense level of 40 and criminal history category of I. Texidor objected to references in the PSR to cocaine and cocaine trafficking given that he was acquitted of the single cocaine charge in the Superseding Indictment, objected to the District Court's imposition of a four-level leadership enhancement pursuant to U.S.S.G. § 3B1.1(a), and argued for a downward variance. With respect to his request for a downward variance, Texidor pointed to the potential rescheduling of marijuana to a Schedule III controlled substance and in particular the Department of Justice's Notice of Proposed Rulemaking on May 16, 2024 proposing the DEA reclassify marijuana from Schedule I to Schedule III.

The District Court struck one reference to cocaine in the PSR, overruled Texidor's objections to the remaining cocaine references, and overruled Texidor's objections to the leadership enhancement. Declining to vary from the Guidelines range of imprisonment, it sentenced Texidor to 292 months' imprisonment, which consisted of: 292 months' imprisonment for conspiring to distribute marijuana, 240 months' imprisonment on the other drug-related counts as well as the firearm count, 60 months' imprisonment for possession with intent to distribute marijuana, and 240 months' imprisonment for wire fraud. All sentences were to run concurrently. Texidor now appeals.

5

## II.  STANDARD OF REVIEW

We review the District Court's interpretation of the Guidelines de novo, *United States v. Seibert*, 971 F.3d 396, 399 (3d Cir. 2020), its "application of the Guidelines to facts for abuse of discretion," and its factual findings for clear error, *United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006). However, when the Guidelines set forth a "predominantly fact-driven test," as is the case for the organizer or leader enhancement pursuant to U.S.S.G. § 3B1.1(a), we apply clear error review to the District Court's determination and will conclude that the District Court "abused its discretion in applying the enhancement based on a particular set of facts only if those facts were clearly erroneous." *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018) (citation omitted). We review procedural and substantive reasonableness challenges for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). For challenges to the substantive reasonableness of a sentence, we will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568.

## III.  ANALYSIS[1]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

6

On appeal, Texidor raises the same acquitted-conduct and leadership-enhancement challenges he raised at sentencing. He also contends that the District Court abused its discretion by imposing a substantively unreasonable aggregate sentence of 292 months' imprisonment for the marijuana trafficking charges, and a substantively unreasonable sentence of 240 months' imprisonment for wire fraud.

### A. The District Court Did Not Abuse its Discretion by Declining to Strike from the PSR Allegations Regarding Cocaine

Texidor contends that, given his acquittal at Count Two charging him with conspiring to distribute cocaine, the District Court procedurally erred by declining to strike from the PSR certain references to cocaine and considering the cocaine allegations during sentencing despite the recent addition of subsection (c) to U.S.S.G. § 1B1.3. Opening Br. 15–20.

#### 1. U.S.S.G. §§ 1B1.3(c) and 1B1.4

Subsection (c) of § 1B1.3, titled "Acquitted Conduct," was recently added to the Guidelines and went into effect on November 1, 2024. It provides that, for purposes of determining a defendant's Guidelines range, "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.3(c) (2024).

Section 1B1.4 predates § 1B1.3(c) and also applies to acquitted conduct. *See United States v. Watts*, 519 U.S. 148, 152–53 (1997) (per curiam). It states that "[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4 (2023).[2] Section 1B1.4 implements 18 U.S.C. § 3661. That statute states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Prior to the addition of § 1B1.3(c), the Supreme Court affirmed that, in accord with U.S.S.G. § 1B1.4 and 18 U.S.C. § 3661, "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Watts*, 519 U.S. at 157. *See also United States v. Ciavarella*, 716 F.3d 705, 735–36 (3d Cir. 2013) (relying on *Watts* to conclude that the district court's consideration of acquitted conduct in sentencing the defendant was proper where the court found it was proven by a preponderance of the

---

[2] Section 1B1.4 was amended on November 1, 2025, but we consider the language that was in effect at the time of sentencing. *United States v. Omoruyi*, 260 F.3d 291, 297 (3d Cir. 2001).

evidence).

To date, only the Eighth Circuit has addressed whether § 1B1.3(c) forecloses a sentencing court's consideration of acquitted conduct when addressing sentencing issues other than the determination of the Guidelines range term of imprisonment. *See United States v. Ware*, 141 F.4th 970, 974 n.2 (8th Cir. 2025). In *Ware*, the Eighth Circuit stated in a footnote that § 1B1.3(c) "does not prohibit a court from considering acquitted conduct when analyzing the factors from § 3553(a)." *Id.*

We agree. As a matter of first impression, we conclude that § 1B1.3(c) does not preclude courts from considering acquitted conduct when analyzing the factors under 18 U.S.C. § 3553(a) and determining whether and where to impose a sentence within or outside of the Guidelines range. Section 1B1.3(c) by its text limits only what a court can consider as "relevant conduct" when calculating the Guidelines range. Our interpretation is consistent with the directive of § 3661 that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also Watts*, 519 U.S. at 151–52. It is also consistent with the Guideline implementing § 3661. *See* U.S.S.G. § 1B1.4; *Watts*, 519 U.S. at 152. As § 1B1.3(c)'s plain text does not limit the consideration of acquitted conduct in contexts other than calculating the

Guidelines range, acquitted conduct may still be considered when determining the appropriate sentence, per 18 U.S.C. § 3661 and U.S.S.G. § 1B1.4.

### 2. *Texidor's Acquitted Conduct*

Turning to whether the District Court improperly considered Texidor's acquitted conduct, the sentencing transcript contains no indication that the District Court relied on cocaine-related conduct when calculating Texidor's Guidelines range. *See generally* A1122–65. The District Court reiterated several times that its resolution of Texidor's objection to the PSR's cocaine references "d[id] not impact the guidelines calculation," because § 1B1.3(c) "precluded [it] from considering information regarding cocaine or cocaine trafficking for purposes of determining relevant conduct as it relates to the calculation of the guideline range." A1125-26, A1129.

Furthermore, the record does not reflect that the District Court considered the acquitted conduct in *any* aspect of Texidor's sentencing. While the District Court noted that U.S.S.G. § 1B1.4 and 18 U.S.C. § 3661 allowed it to consider the cocaine-related conduct as background information "for the purposes of selecting the appropriate sentence within or outside the guideline range," A1129, it did not reference any cocaine-related conduct during its consideration of the § 3553(a) factors or in announcing its ultimate sentencing

10

decision.  *See* A1150–57.[3]

### B. The District Court Did Not Abuse its Discretion by Applying a Four-Level Increase in Offense Level for Leadership Pursuant to U.S.S.G. § 3B1.1(a)

Section 3B1.1(a) of the Guidelines imposes a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  As we stated in *United States v. Adair*, "an 'organizer' is a person who generates a coherent functional structure for coordinated criminal activity," and "a 'leader' is a person with high-level directive power or influence over criminal activity."  38 F.4th 341, 354 (3d Cir. 2022); *see id.* (concluding that "the terms 'organizer' and 'leader' are not genuinely ambiguous" and thus "[t]he common ordinary meanings of those terms at the time of promulgation together with the structure and purpose of § 3B1.1 lead to contextually appropriate definitions of those terms").

---

[3] Texidor argues in the alternative that the District Court abused its discretion by considering the PSR's references to cocaine without first finding such allegations proven by a preponderance of evidence.  We need not address this argument because, to the extent there was any error, it was harmless.  As explained above, the record does not reflect that the District Court considered the acquitted conduct in crafting Texidor's sentence.

11

The District Court's finding that Texidor was a leader and organizer under § 3B1.1 was not clearly erroneous. Texidor recruited individuals, including family members, to receive marijuana shipments and organized their receipt of said shipments; provided both his residential and business premises to the organization for the purpose of operating the enterprise and concealing their drug trafficking activities; regularly coordinated drop-offs and pickups of marijuana shipments; and communicated with other members about drug sales to customers, parcels held by USPS, and debts and payments due. Texidor also helped organize the group's efforts to track the marijuana shipments through GPS trackers, identify the suspected thief, and violently intimidate and threaten D.H. Over the course of executing that violent intimidation strategy, other members of the organization reported to Texidor. This included the perpetrators of a drive-by shooting of D.H.'s car and residence, who reported to Texidor and left the vehicle they used at Texidor's home. Texidor subsequently transferred it to the home of his uncle, a person whom Texidor had recruited to the conspiracy. With respect to § 3B1.1(a)'s participant requirement, the District Court did not clearly err when it found that Texidor's criminal activity involved "25 different addresses and 15 different individuals … [who] receiv[ed] the packages from California," and that Texidor directed, among others, "his co-defendant, Jonathan Cobaugh, in all aspects of the drug trafficking organization," and "his uncle, who was not indicted[,] … to receive and track marijuana shipments." A1137.

12

Texidor relies on our decision in *United States v. Belletiere* to argue that, like the defendant there, Texidor "never exercised control of [the other participants'] resale or distribution network," and that the other participants involved in the conspiracy were not "answerable" to him. Opening Br. 12; *see* 971 F.2d 961 (3d Cir. 1992). However, unlike the individuals in *Belletiere*, the participants in Texidor's criminal enterprise were not mere "suppliers" or "customers" of the marijuana, *Belletiere*, 971 F.2d at 970, and the criminal activity in Texidor's case did not merely consist of a "series of unrelated drug sales," *id.* at 971. Rather, the participants were individuals, including family members, whom Texidor recruited to receive marijuana shipments on the main conspirators' behalf, individuals for whom he provided his business premises for the purpose of organizing and concealing their drug trafficking activities; individuals with whom he communicated regularly to organize the organization's activities; and individuals with whom he schemed to engage in threats and violence against D.H., some of whom answered to Texidor afterwards. In sum, it was not clear error for the District Court to conclude, by a preponderance of the evidence, that Texidor was an organizer and leader of a criminal activity involving five or more participants under § 3B1.1(a).

13

**C. Texidor's Aggregate Sentence of 292 Months' Imprisonment in the Marijuana Trafficking Case is Substantively Reasonable**

Texidor also argues on appeal that his total sentence of 292 months' imprisonment in the drug and firearm conspiracy case is substantively unreasonable. We disagree.

After calculating the Guidelines range and ruling on Texidor's objections, the District Court examined the § 3553(a) factors at length and provided a detailed explanation of why it determined that a bottom-of-the-guidelines-range sentence of 292 months' imprisonment was appropriate. The District Court relied on (1) the duration of the criminal activity; (2) the total quantity of marijuana trafficked, "an astonishing amount . . . [of] nearly 3,000 kilograms[;]" (3) Texidor's and his co-conspirators' use of threats and violence in furtherance of their criminal enterprise; and, (4) Texidor's separate criminal conduct of PPP fraud that he committed while on pretrial release. A1151–53.

To support his challenge, Texidor mainly argues that the Department of Justice may eventually reclassify marijuana as a Schedule I controlled substance to a Schedule III controlled substance. Opening Br. 20–23. But it was not an abuse of discretion for the District Court to impose a sentence that was guided by the current classification of marijuana as a Schedule I controlled substance when it sentenced Texidor in December 2024. Moreover, the District Court explained that Texidor's case "wasn't just marijuana trafficking, which is serious

14

enough," but involved the use of "tracking devices, firearms, and violence to protect [the organization's] operation." A1151. Indeed, as the District Court explained, the 292-month aggregate sentence was driven in significant part by the specific offense characteristics leading to an additional ten levels in Texidor's criminal offense level, including Texidor's leadership and organization of the criminal activity, possession of a dangerous weapon, use of violence or credible threats of violence, and maintenance of a drug-involved premises. For these reasons, the District Court's sentence was not one that "no reasonable sentencing court would have imposed" on the facts of this case. *Tomko*, 562 F.3d at 568.

### D. Pursuant to the Concurrent Sentence Doctrine, We Decline to Review Texidor's Challenge to His Sentence on the Wire Fraud Charge

Last, Texidor argues that the District Court's sentence of 240 months' imprisonment for the wire fraud charge was substantively unreasonable. We exercise our discretion pursuant to the concurrent sentence doctrine and decline to review this challenge.

Under the concurrent sentence doctrine, courts may exercise their discretion not to resolve legal issues on one or more counts when any outcome on those count(s) will not change the overall time a defendant will serve. This occurs when a sentence on at least one count of conviction is of equal or greater length to the challenged count, runs concurrently, and will survive. *See United States v. McKie*, 112 F.3d 626,

15

628 n.4 (3d Cir. 1997). The rationale of this doctrine is that it "preserves valuable and limited judicial resources for deciding those cases which might actually result in practical changes for the litigants." *Duka v. United States*, 27 F.4th 189, 194 (3d Cir. 2022). In other words, "there is no use expending the limited resources of the litigants and the judiciary reviewing a conviction where, regardless of the outcome, the defendant will remain subject to the same sentence." *Id.*; *see also United States v. Charles*, 932 F.3d 153, 158 (4th Cir. 2019) (noting that "the concurrent sentence doctrine rests on the same rationale underlying harmless-error review").

The concurrent sentence doctrine is not always applicable, and even when it is, a court's exercise of its discretion to apply it is not always appropriate. As established in *Ray v. United States*, the concurrent sentence doctrine is generally unavailable when a defendant challenges a conviction on direct review. *See Duka*, 27 F.4th at 195–96 (discussing *Ray v. United States*, 481 U.S. 736 (1987) (per curiam)); *see also United States v. Ross*, 801 F.3d 374, 382 (3d Cir. 2015) ("*Ray* establishes that, when a court orders a defendant to pay a special assessment for each of several counts of conviction, the sentences are not concurrent and the 'concurrent sentence' doctrine cannot be used to avoid appellate review of each count of conviction."). However, courts have "continued to regularly apply the [concurrent sentence doctrine] in direct appeals where a defendant challenges only the length of one concurrent sentence, rather than the legality of a conviction underlying that sentence." *Kassir v. United States*, 3 F.4th 556, 562 (2d

16

Cir. 2021); *see also United States v. Bradley*, 644 F.3d 1213, 1293–94 (11th Cir. 2011); *United States v. Harris*, 695 F.3d 1125, 1139 (10th Cir. 2012) ("*Ray*'s holding, however, does not eliminate the applicability of the doctrine in cases where a defendant challenges only the *length of his sentence ...*").

Even in such contexts though, courts have declined to exercise their discretion under the concurrent sentence doctrine when the defendant would suffer "unique cognizable collateral consequences" from the court's decision not to address the legality of the challenged sentence or conviction. *Duka*, 27 F.4th at 196 (3d Cir. 2022); *see also United States v. Lampley*, 573 F.2d 783, 788 (3d Cir. 1978) ("[The concurrent sentence doctrine] should not be applied where there is a significant risk of greater adverse collateral consequences from multiple convictions."). Our case law explains that the risk of collateral consequences must be "significant" to preclude the doctrine's application, *Lampley*, 573 F.2d at 788, but we have not added color to when a risk meets that standard. Following our sister circuits, we clarify that such risk must be "concrete" and "non-speculative." *Ruiz v. United States*, 990 F.3d 1025, 1031 (7th Cir. 2021). In contrast, when the risk of collateral consequences is speculative, courts may exercise their discretion and apply the concurrent sentence doctrine. *See United States v. Sherifi*, 107 F.4th 309, 317 (4th Cir. 2024) (application of concurrent sentence doctrine is appropriate when it can be "foreseen with reasonable certainty" that a defendant will "suffer no adverse collateral consequences" from its application (citation omitted)); *United States v.*

17

*Charles*, 932 F.3d 153, 160 (4th Cir. 2019) (discussing application of the doctrine when there is "no substantial possibility" that an adverse collateral consequence would result (citation omitted)); *Eason v. United States*, 912 F.3d 1122, 1124 (8th Cir. 2019) (affirming that "speculative consequences" do not preclude application of the concurrent sentence doctrine (citation omitted)).

Here, we have rejected Texidor's challenge to his aggregate sentence of 292 months' imprisonment for his marijuana trafficking convictions. Accordingly, this concurrent sentence will survive any challenge to the length of his wire fraud sentence. Texidor argues that we should not apply the concurrent sentence doctrine because marijuana may be reclassified from a Schedule I to a Schedule III controlled substance. He asserts that applying the concurrent sentence doctrine will subject him to the risk "of losing out on the benefits of likely marijuana reforms," principally in the form of a lower Guidelines range on his marijuana counts. Opening Br. 25. Texidor reasons that this would, in turn, lower the total Guidelines range applicable to all of his counts of conviction, including for his wire fraud conviction.

We conclude that the collateral consequences Texidor urges are too speculative to preclude application of the concurrent sentence doctrine. Although a recent executive order directs that marijuana be rescheduled as a Schedule III

controlled substance,[4] the risk Texidor complains of—"losing out on the benefits" of that rescheduling in the form of a reduced Guidelines range—remains speculative, as the Guidelines already treat unspecified Schedule III substances and marijuana the same for purposes of determining offense level. *See generally* U.S.S.G. § 2D1.1(c) (2024).[5] Thus,

---

[4] See Increasing Medical Marijuana and Cannabidiol Research (accessed Dec. 18, 2025), https://perma.cc/7DBT-W8ZX.

[5] Section 2D1.1(c) defines the term "Converted Drug Weight" as "a nominal reference designation … [used] to determine the offense level for controlled substances that are not specifically referenced in the Drug Quantity Table or when combining differing controlled substances." *See* 2D1.1(c), Notes to Drug Quantity Table (K). "Converted Drug Weight" replaced the term "marijuana equivalency" and reflects the Sentencing Commission's estimation of how harmful a controlled substance is as compared to marijuana. *See* U.S.S.G. Amend. 808 (effective Nov. 1, 2018) (changing language from "marihuana equivalency" to "converted drug weight," but not changing conversion rate). For those Schedule III substances not specifically listed in the Drug Quantity Tables (such as heroin and fentanyl), the Drug Conversion Tables provide a way to calculate the appropriate offense level by pegging the offense level for the Schedule III substance to the marijuana offense level. *See* U.S.S.G. § 2D1.1(c), App. Note 8(d) (one unit of Schedule III substance converts to one gram of Converted Drug Weight); U.S.S.G. § 2D1.1 App. Note 8(d) (2016) (one gram of schedule III substance is equivalent to one gram of marijuana); *see generally* U.S.S.G. § 2D1.1(c) (setting

rescheduling marijuana as a Schedule III substance will likely have no impact on Texidor's offense levels, as it is already the same as the offense level for an unspecified Schedule III substance. Furthermore, even if the United States Sentencing Commission were to amend the Guidelines Drug Quantity or Drug Conversion Tables (despite the fact that the Sentencing Commission has already found it appropriate to treat marijuana and unspecified Schedule III controlled substances the same), any risk that Texidor cannot benefit from that change remains uncertain. For instance, it is equally speculative that Texidor would be unable to apply for resentencing pursuant to 18 U.S.C. § 3582(c).[6] In light of the foregoing, Texidor does not assert the kind of non-speculative collateral consequence that cautions against application of the concurrent sentence doctrine. *See Charles*, 932 F.3d at 157 (rejecting the defendant's collateral consequences argument because, "[w]hile the scenario posed by [the defendant] [is] technically

all offenses level the same for marijuana and "Converted Drug Weight"). For example, the Table imposes an offense Level of 30 for both 1,000 to 3,000 kgs of marijuana and 1,000 to 3,000 kgs of an unspecified Schedule III controlled substance due to the one-to-one conversion. U.S.S.G. § 2D1.1(c).

[6] *See, e.g.,* U.S.S.G. Amends. 706, 711 (effective Nov. 1, 2007), Amend. 713 (effective Nov. 1, 2007) (making Amendments 706 and 711 retroactive); U.S.S.G. Amend. 750 (effective Nov. 1, 2011), Amend. 759 (effective Nov. 1, 2011) (making Amendment 750 retroactive); U.S.S.G. Amend. 782 (effective Nov. 1, 2014), Amend. 788 (effective Nov. 1, 2014) (making Amendment 782 retroactive).

*possible*, the factors that would have to line up to support such a result make it implausible"). Accordingly, we apply the concurrent sentence doctrine and decline to review Texidor's substantive reasonableness challenge to his wire fraud sentence.

* * * * *

For these reasons, we will AFFIRM.

*Counsel for Appellant*
Craig E. Kauzlarich      [Argued]
Abom & Kutulakis

*Counsel for Appellee*
Jeffery F. St. John      [Argued]
Carlo D. Marchioli
Office of United States Attorney,
Middle District of Pennsylvania