# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3359

_____

Richard Ashton Oslund

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: August 26, 2019
Filed: December 10, 2019

_____

Before BENTON, WOLLMAN, and ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Richard Ashton Oslund robbed and murdered an armored car security guard in 1998. He was convicted in 2004 of robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951 (count 1); murder with a firearm during a robbery affecting interstate commerce, in violation of 18 U.S.C. § 924(c)(1)(A) and (j)(1)

(count 2); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (count 3).

Oslund was sentenced to twenty years' imprisonment on count 1, life imprisonment on count 2, and life imprisonment on count 3. The sentencing court concluded that the Armed Career Criminal Act (ACCA) applied to count 3, because Oslund had three previous convictions for violent felonies or serious drug offenses, including a 1994 Minnesota conviction for second-degree burglary. The statutory sentencing range for count 3 under the ACCA was fifteen years' to life imprisonment. See 18 U.S.C. § 924(e)(1). Without the ACCA enhancement, the statutory maximum sentence would have been ten years' imprisonment. See id. § 924(a)(2). The then-mandatory U.S. Sentencing Guidelines required life imprisonment on count 3.

The sentencing court ordered the twenty-year sentence on count 1 and the life sentence on count 3 to run concurrently, with the life sentence on count 2 to run consecutively. The court expressed its intention that Oslund remain imprisoned for life, stating that "what you did ought not to be repeated, and I'm placing you in a position where you may not do so." This court affirmed the convictions and sentences, holding harmless any error by the sentencing court in applying the U.S. Sentencing Guidelines as mandatory. United States v. Oslund, 453 F.3d 1048, 1060-62 (8th Cir. 2006). Oslund moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 in 2007, which was denied. See D. Ct. Order of July 24, 2008.

After the Supreme Court struck down the ACCA's residual clause as unconstitutionally vague in Johnson v. United States, 135 S. Ct. 2551, 2557, 2563 (2015), Oslund moved for permission to file a second or successive § 2255 motion to vacate the life sentence imposed on count 3. Oslund claimed that he did not qualify for the ACCA's mandatory sentencing enhancement after Johnson because he did not have three qualifying convictions under the ACCA. Specifically, he argued that his 1994 Minnesota conviction for second-degree burglary fell under the

residual clause and thus could no longer be considered a violent felony. We authorized Oslund to challenge his ACCA status and granted him permission to file the second or successive § 2255 motion, which the district court[1] denied based on the concurrent sentence doctrine.

On appeal from the denial of the motion, we did not address whether the district court correctly applied the concurrent sentence doctrine, but rather remanded the matter based on intervening case law. Oslund v. United States, 751 F. App'x 961, 961-62 (8th Cir. 2019) (per curiam) (relying on Walker v. United States, 900 F.3d 1012, 1014-15 (8th Cir. 2018)). We instructed the district court to determine whether Oslund had shown that the sentencing court relied on the residual clause to apply the ACCA enhancement. Id. at 962. On remand, the district court determined that Oslund had "demonstrated by a preponderance of the evidence that the sentencing court relied on the residual clause in finding that his prior conviction for second-degree burglary was a 'violent felony' under § 924(e) and in applying the ACCA's sentencing enhancement." D. Ct. Order of July 17, 2019, at 9. The district court did not "reconsider its findings with respect to the concurrent sentence doctrine." Id. at 9 n.5. The district court's memorandum opinion was then transmitted to this court and the appeal was reopened.

Oslund argues that the district court erred in applying the concurrent sentence doctrine. The doctrine allows courts to decline to review the validity of a concurrent sentence "when a ruling in the defendant's favor 'would not reduce the time he is required to serve' or otherwise 'prejudice him in any way.'" Eason v. United States,

---

[1] The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

912 F.3d 1122, 1123 (8th Cir. 2019) (quoting United States v. Olunloyo, 10 F.3d 578, 581 (8th Cir. 1993)).[2]

As an initial matter, resentencing on count 3 alone would not reduce the time Oslund is required to serve because it would not affect his concurrent twenty-year sentence on count 1 or his consecutive life sentence on count 2. Oslund argues that he is entitled to a full resentencing because, had the sentencing court known that the statutory maximum sentence on count 3 was ten years' imprisonment, it would have imposed a lesser sentence on count 2. The record belies Oslund's argument, however, for the sentencing court clearly expressed its intent that Oslund never be released

---

[2]Oslund challenges only the sentence imposed on count 3, not the underlying conviction for being a felon in possession of a firearm. Before the Supreme Court clarified and limited the application of the doctrine with respect to convictions, "courts struggled to define the minimal level of prejudice that would preclude application of the concurrent sentence doctrine." Eason, 912 F.3d at 1123. We seemed to apply the doctrine only when there was "no possibility of prejudicial collateral consequences attendant upon the convictions." Logan v. Lockhart, 994 F.2d 1324, 1332 (8th Cir. 1993) (internal quotation marks omitted); see Brewer v. Iowa, 19 F.3d 1248, 1250 (8th Cir. 1994) (explaining that "[a] habeas corpus action is moot when there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction" (internal quotation marks and citation omitted)). In Rutledge v. United States, 517 U.S. 292 (1996), the Supreme Court held that the special assessment imposed upon a defendant for each count of conviction, see 18 U.S.C. § 3013, constitutes "sufficient prejudice to require § 2255 review of a concurrent conviction's validity." Eason, 912 F.3d at 1123 (citing Rutledge, 517 U.S. at 301-03). We considered the application of the doctrine to a concurrent sentence in Eason and held that "where a § 2255 motion challenges only the validity of a concurrent sentence . . . the concurrent sentence doctrine will apply unless a ruling in [the defendant's] favor would reduce the time he is required to serve or otherwise prejudice him in any way." Id. (citing United States v. Bradley, 644 F.3d 1213, 1293-94 (11th Cir. 2011)); see also Smith v. United States, 930 F.3d 978, 980-81 (8th Cir. 2019), *pro se petition for cert. denied* (U.S. Nov. 18, 2019) (No. 19-6313).

from prison. As we explained on direct appeal, the Guidelines sentencing range on count 2 was ten years' to life imprisonment, and the sentencing court chose a sentence at the top of the Guidelines range.

> The district court therefore had the ability on Count 2, even under the mandatory Guidelines regime, to sentence Oslund anywhere within that range of ten years to life but declined to exercise that discretion in Oslund's favor. Instead, the court imposed the longest sentence available to it.

Oslund, 453 F.3d at 1061. In light of the life sentence imposed on count 2 and the sentencing court's specific statements that Oslund remain in prison for life, we find no error in the district court's conclusion in this matter that "the resulting sentence for the murder conviction would remain the same," even assuming Oslund had set forth a valid Johnson challenge. D. Ct. Order of Oct. 13, 2017, at 13.

Oslund argues that we should apply the sentencing package doctrine and remand for resentencing on all counts. "Under the sentencing package doctrine, when a defendant successfully attacks one but not all counts of conviction on appeal, we 'may vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a).'" Smith, 930 F.3d at 981 (quoting United States v. McArthur, 850 F.3d 925, 943 (8th Cir. 2017)). We rejected in Smith a defendant's contention that he was entitled to a full resentencing after his ACCA sentence was deemed invalid in light of Johnson. Id. at 980-81. Because the conviction for being a felon in possession of a firearm was not vacated and because the record indicated that the district court would have applied the same sentence regardless of the ACCA and career offender determinations, we held that "the record gives us no basis to conclude that the district court abused its discretion in not ordering a complete resentencing." Id. at 981 (citing Wright v. United States, 902 F.3d 868, 872-73 (8th Cir. 2018)). Smith is instructive here, because Oslund's

conviction for being a felon in possession of a firearm remains valid and "extensive evidence in the record indicates [that the sentencing judge] would have imposed the same sentence" without the ACCA-enhanced sentence. D. Ct. Order of Oct. 13, 2017, at 13. Accordingly, the district court was not required to order a full resentencing.

Oslund next argues that he will be prejudiced if his ACCA sentence is not vacated because that additional life sentence requires him to remain imprisoned at a high security institution. Relying on a Bureau of Prisons (BOP) program statement, Oslund contends that if he had only one life sentence, he might be eligible to transfer to a lower security prison (where the conditions of confinement would be better) earlier than if his ACCA sentence were not vacated. See U.S. Dep't of Justice, Fed. Bureau of Prisons, P5100.08 Program Statement: Inmate Security Designation and Custody Classification (Sept. 12, 2006). Oslund did not cite the BOP program statement or any other support in his two-sentence argument to the district court. The district court did not address the unsubstantiated assertion, and we decline to address Oslund's argument here. Even if the argument had been properly preserved, it appears that the ACCA sentence does not affect Oslund's security classification because a different section of the same BOP program statement seems to require every inmate serving a life sentence to remain in a high security institution, unless the inmate obtains a waiver.

Finally, Oslund argues that having two life sentences adversely affects his eligibility for clemency. He relies on President Barack Obama's commutation of 1,715 sentences (including 504 life sentences) to argue that "although in the past, the prospect of a grant of presidential clemency may have seemed remote, that is no longer the case." Appellant's Br. 34-35 (citing Office of the Pardon Attorney, Clemency Statistics, www.justice.gov/pardon/clemency-statistics). Under President Obama, the Department of Justice undertook "the Clemency Initiative, inviting petitions for commutation of sentence from nonviolent offenders who, among other criteria, likely would have received substantially lower sentences if convicted of the

same offenses today." Office of the Pardon Attorney, Clemency Initiative, www.justice.gov/pardon/clemency-initiative (updated Dec. 11, 2018). The Clemency Initiative "prioritized petitions from individuals convicted of drug trafficking offenses" and ended when President Obama left office. Id. Having robbed and killed an armored car security guard, Oslund is not a nonviolent drug offender, and thus a petition for clemency by Oslund would not have been prioritized under the initiative. Oslund has not cited an instance in which a president granted clemency to a prisoner who had been convicted of murder, and in light of the circumstances of Oslund's offenses, it appears "highly speculative" that Oslund's ACCA sentence will affect his eligibility for clemency. See Eason, 912 F.3d at 1124 (quoting United States v. Wilson, 671 F.2d 1138, 1139-40 n.2 (8th Cir. 1982) (order denying petition for rehearing)); see also United States v. Charles, 932 F.3d 153, 160 (4th Cir. 2019) ("[W]hen determining the potential consequences of leaving a sentence unreviewed, we must not engage in unrealistic speculation about the possibility of future harm."). We thus conclude that the district court did not err in applying the concurrent sentence doctrine.[3]

The district court's October 13, 2017, order is affirmed.

ARNOLD, Circuit Judge, dissenting.

I agree with the court that a ruling in Oslund's favor would not reduce the sentence imposed because the district court clearly intended to sentence him to life in prison in any event. But since I cannot say that the sentence Oslund challenges will not otherwise prejudice him, I respectfully disagree that we should apply what has come to be called the concurrent-sentence doctrine. I would either reach the merits of this appeal or vacate the sentence.

---

[3] We agree with the district court's determination that Oslund's consecutive life sentences are the functional equivalent of concurrent life sentences.

During the late twentieth century, the concurrent-sentence doctrine fell out of favor primarily because of the difficulty courts had in identifying the myriad ways in which a conviction or sentence might affect a criminal defendant. One member of our court explained, "Because of more recent awareness of possible adverse effects of multiple convictions upon the lengths of time prisoners may serve and other factors as well, this circuit has reduced its reliance upon the concurrent sentence doctrine." *Lee v. Lockhart*, 754 F.3d 277, 279 (8th Cir. 1985) (Henley, J., concurring). Perhaps because of a growing appreciation of this difficulty, we essentially restricted the doctrine to a point that it rarely had any application. We explained that our "court has been reluctant to apply the concurrent sentence doctrine, seeming to require 'no possibility' of prejudicial collateral consequences attendant upon the convictions—not just a slim possibility—before denying review on the merits." *Logan v. Lockhart*, 994 F.2d 1324, 1332 (8th Cir. 1993).

And it wasn't only our court. Two years after Judge Henley's observation, the Supreme Court unanimously declined to apply the doctrine because of the collateral consequence of a fifty-dollar assessment. *See Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam). This decision had the practical effect of eliminating the doctrine from challenges to concurrent convictions. *See Eason v. United States*, 912 F.3d 1122, 1123 (8th Cir. 2019). Other courts refused outright to apply the doctrine under any circumstance. *See, e.g.*, *United States v. De Bright*, 730 F.2d 1255, 1256 (9th Cir. 1984) (en banc). The *De Bright* court expressed "serious doubt . . . about our ability to ascertain all the adverse collateral legal consequences of unreviewed convictions and, assuming we have that ability, the practicality of attempting to ascertain those consequences." *Id.* at 1258. Searching for potential consequences "would ordinarily be very time-consuming," though judicial economy "is the only justification for the doctrine." *Id.* As one commentator observed, "[n]ot many of the cases invoking the [concurrent-sentence] doctrine post-date 1987." 13C Richard D. Freer & Edward H. Cooper, Federal Practice & Procedure § 3533.4.2 (3d. ed. 2019 update).

Indeed, after our 1993 decision in *Logan*, our court apparently went a quarter of a century before issuing another published opinion discussing this moribund doctrine in any meaningful detail. In *Eason*, our court briefly resuscitated it, applying it in a situation where the potential adverse effect complained of "*could not occur* unless [the defendant] chooses to commit serious violations of law during his future term of supervised release," making the adverse consequences "entirely within [the defendant's] control to avoid." 912 F.3d at 1124. Of course, such circumstances are not present here. We invoked the doctrine again in a divided opinion six months later in *Smith v. United States*, 930 F.3d 978, 980–81 (8th Cir. 2019), but the question in that case was whether the challenged sentence affected an unchallenged sentence. I agree with the court that Oslund's challenged sentence did not affect his unchallenged sentence because the district court intended to sentence Oslund to life in prison in any event. The court and I differ only on whether there is no chance the sentence Oslund challenges will have collateral consequences, and *Smith* says nothing on that subject.

Whatever the wisdom of reinvigorating the doctrine under the limited circumstances presented in *Eason* and *Smith*, I do not believe we should expand the doctrine as the court does here beyond where we left it decades ago in *Logan*. Oslund offers two potential collateral consequences. The first is that his second life sentence may affect how the Bureau of Prisons treats him. The court faults Oslund for offering only a two-sentence argument raising this concern to the district court. But Oslund stated his belief that the Bureau of Prisons would treat him more leniently if he has only one life sentence, and that should have alerted the government to the argument Oslund fleshes out on appeal.

Though it declines to address Oslund's argument, the court nonetheless sides with the government's three-sentence argument, contained in a 28(j) letter sent to the court after oral argument and after Oslund had already briefed the matter, that his second life sentence carries no weight in the BOP's eyes. Perhaps the government is ultimately correct, though the limited discussion of the BOP's policies, a matter over

which courts rarely pass, leaves me with at least some question whether Oslund may find himself treated differently by the BOP because of his second life sentence. I therefore have a hard time concluding there is no possibility of prejudicial collateral consequences attendant upon the convictions. *See Logan*, 994 F.2d at 1332.

I also take issue with the court's rejection of Oslund's clemency argument because Oslund did not show that, of the 504 life sentences that President Obama commuted during his second term, Oslund failed to identify anyone who had committed murder and yet had a sentence commuted. The court also offers information about the Obama-era "Clemency Initiative" even though the relevance of that initiative is unclear since we do not know how many of the 504 commuted life sentences identified were due to that initiative. Predicting whether an imprisoned defendant might receive executive relief is admittedly difficult, but that has not stopped us from declining to apply the concurrent-sentence doctrine based on that possibility. In *Logan*, we observed that, according to a published opinion from a state high court, the governor "had commuted 30 'straight life' sentences to terms of years" over a five-year period, and the defendant there was serving a "straight life" sentence. 994 F.2d at 1331–32. We held the defendant had shown enough to prevent application of the concurrent-sentence doctrine. We did not require, as the court does here, that the defendant offer statistics on how many defendants who had committed the same crime as he did ultimately obtained executive relief. And it makes at least intuitive sense that the president may be more skeptical of granting relief to someone serving two life sentences as opposed to one. I therefore cannot conclude there is "no possibility" of collateral consequences. While I might agree that there is only a "slim possibility" that Oslund would be granted clemency, that would be enough to entitle him to have his claim considered under our precedents. *See id.* at 1332.

The court appears to presume that Oslund carries the burden of demonstrating he might face collateral consequences. But I have not found a decision from our court (or any other court) so holding, and the government directs us to none, though at least

one court has held exactly the opposite. *See United States v. Vargas*, 615 F.2d 952, 960 (2d Cir. 1980). That court explained that "the defendant should not have to make an affirmative showing of collateral consequences. Rather, to invoke the [concurrent-sentence] doctrine, the Government should have the burden of persuading the appellate court that the risk of collateral consequence is too slight to justify review." *Id.* I agree. This is a doctrine of judicial convenience—a sort of decisional fast track—that the government may request. The government should therefore have to convince the court to take that fast track, or else we should just review the challenge as we do all others.

Finally, even if Oslund's challenge is much ado about nothing as the government contends, I do not see why we should not just vacate Oslund's sentence. Why does the government deploy resources in an effort to uphold a sentence that it argues has no effect? "If indeed the [sentence] has no collateral consequences, there is nothing lost by vacating [it]." 13C Richard D. Freer & Edward H. Cooper, Federal Practice & Procedure § 3533.4.2 (3d. ed. 2019 update). That's the course some circuits take, *see, e.g.*, *United States v. Stovall*, 825 F.2d 817, 824 (5th Cir. 1987), and we have approved of district courts in our circuit taking that course. *See Barnes v. United States*, No. 99–4240, 2000 WL 889838, at *1 (8th Cir. 2000) (unpublished per curiam). I see no reason why we should not do the same thing here, and the court offers none.

I respectfully dissent.

———————————————

-11-