PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2793
_____

DRITAN DUKA,
                    Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-13-cv-03664)
District Judge: Honorable Robert B. Kugler

_____

No. 20-2799
_____

SHAIN DUKA,
                    Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-13-cv-03665)
District Judge: Honorable Robert B. Kugler
_____

Argued: November 9, 2021

Before: HARDIMAN, MATEY, and SCIRICA, *Circuit
Judges*

(Opinion filed: March 8, 2022)

Stephen F. Downs
Kathy E. Manley [ARGUED]
26 Dinmore Road
Selkirk, NY  12158

     *Counsel for Appellants*

Mark E. Coyne
John F. Romano [ARGUED]
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ  07102

     *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

**SCIRICA**, *Circuit Judge*

Petitioner-Appellants Dritan and Shain Duka are each serving multiple sentences for various crimes arising out of a plot to attack the United States Army base at Fort Dix, New Jersey, among other United States military bases and facilities. Appellants moved for relief under 28 U.S.C. § 2255, primarily contending their 18 U.S.C. § 924(c) convictions must be vacated under *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019). On August 6, 2020, the United States District Court for the District of New Jersey denied their motions for relief under 28 U.S.C. § 2255. The trial judge declined to consider the merits of Appellants' challenge to their Section 924(c) convictions, reasoning that, since they were each subject to an unchallenged life sentence, any potential vacatur of their Section 924(c) convictions would result in no practical change to their confinement. In so finding, the trial judge invoked the "concurrent sentence doctrine's rationale," J.A. 21, which provides a court "discretion to avoid resolution of legal issues affecting less than all of the counts in an indictment where at least one count will survive and the sentences on all counts are concurrent." *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997). Appellants contend this invocation was an abuse of discretion, and request we expand their certificates of appealability to consider additional claims for relief previously rejected by the District Court.

We will affirm the District Court's judgment in full.

I. [1]

A.

Appellants are a pair of Albanian-born brothers who lived in New Jersey illegally. Along with a group of co-defendants, the pair developed an interest in violent jihad and committing attacks against the United States military. Appellants were brought to the FBI's attention when the agency received a copy of a video dated January 2006 that depicted Appellants and their co-defendants at a firing range in the Pocono mountains shooting weapons and shouting "jihad in the States." *United States v. Duka*, 671 F.3d 329, 333–34 (3d Cir. 2011). Over the next sixteen months, the FBI deployed two cooperating witnesses to monitor Appellants' activities and develop evidence against them. The FBI learned that in 2006 and 2007, Appellants took at least two trips to the Pocono mountains to train for their jihad along with their co-defendants. During these trips, Appellants fired weapons, attempted to purchase automatic firearms, discussed their jihadist plans, and watched violent jihadi videos, including videos of "hundreds" of beheadings. *Duka*, 671 F.3d at 334. Appellants also befriended Besnik Bakalli, an FBI informant and fellow Albanian, and encouraged Bakalli to join their planned jihad.

In January 2007, the brothers told Bakalli they had acquired a shotgun, two semi-automatic rifles, and a pistol. Evidently unsatisfied with their growing arsenal, Appellants

---

[1] This summary of the relevant facts regarding the Appellants' actions, trial, and convictions is drawn from our prior decision regarding Appellants' direct appeal, *United States v. Duka*, 671 F.3d 329 (3d Cir. 2011).

4

ordered nine fully automatic rifles from a contact in Baltimore. In response, the FBI arranged a controlled transaction, and, on May 7, 2007, Appellants visited the apartment of an FBI cooperating witness with plans to retrieve these weapons. After handing cash to the cooperator, Appellants examined and handled four automatic machineguns and three semi-automatic assault rifles. Appellants then asked for garbage bags to conceal the weapons so they could bring them to their car. But before they were able to do so, Appellants were intercepted and arrested by federal and state law enforcement officers. The entire transaction was captured on video by cameras the FBI had installed in the cooperator's apartment. All five co-defendants were apprehended on May 7, 2007.

## B.

Along with their co-defendants, Appellants were charged under a superseding indictment filed on January 15, 2008. The superseding indictment charged Appellants with:

- Conspiracy to murder members of the U.S. military, in violation of 18 U.S.C. §§ 1114 & 1117;

- Attempt to murder members of the U.S. military, in violation of 18 U.S.C. § 1114;

- Possession or attempted possession of firearms in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(ii);

- Possession of machineguns in violation of 18 U.S.C. § 922(o); and

- Two counts of possession of firearms by an illegal alien in violation of 18 U.S.C. § 922(g)(5).

Appellants pled not guilty to all charges. After a two-and-a-half-month jury trial, each Appellant was convicted on the charges of conspiracy to murder members of the United States military, possession or attempted possession of firearms in furtherance of a crime of violence, possession of machineguns, and two counts of possession of firearms by an illegal alien. They received identical sentences as follows:

- Conspiracy to murder members of the U.S. military: Life imprisonment.

- Possession or attempted possession of firearms in furtherance of a crime of violence: 360 months' imprisonment to run consecutively with their life sentences.

- Possession of machineguns: 120 months' imprisonment to run concurrently with their life sentences.

- Possession of firearms by an illegal alien: 120 months' imprisonment on each count, to run concurrently with their life sentences.

## C.

In the intervening years since their sentencing, Appellants have launched several unsuccessful challenges to their convictions. First, they, along with their co-defendants, raised numerous challenges to their convictions on direct

6

appeal. *See Duka*, 671 F.3d at 336–56. On December 28, 2011, we rejected each of Appellants' arguments and affirmed the trial judge's decision with respect to them. *Id.* at 333.

On June 13, 2013, Appellants filed a federal habeas petition under 28 U.S.C. § 2255, making several different claims, including contending they received ineffective assistance of both trial and appellate counsel, and that the Government withheld certain exculpatory information. After an evidentiary hearing on one claim, the trial judge denied each of Appellants' asserted grounds for relief. Appellants filed for a certificate of appealability, which we denied on February 6, 2017.

In February and April 2019, each Appellant a filed motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6). The basis of this motion was an assertion that the trial judge failed to properly instruct the jury on the appropriate mens rea for their conspiracy to commit murder charge. In June 2019, the trial judge denied both motions. Appellants appealed these decisions. Ultimately, Dritan Duka voluntarily withdrew his appeal. But Shain Duka persisted and, on January 22, 2020, we denied his request for a certificate of appealability stating the "correctness of the challenged jury instruction is not debatable." *Duka v. United States*, No. 19-2676, 2020 WL 8073724, at *1 (3d Cir. Jan. 22, 2020).

As these challenges were ongoing, the Supreme Court decided *Johnson v. United States*, 576 U.S. 591, 597 (2015), finding the residual clause of 18 U.S.C. § 924(e) violated due process. On June 27, 2016, in parallel to the rest of their appeals, Appellants filed a motion to vacate their Section 924(c) convictions, on the basis that their Section 924(c)

7

convictions were made under a residual clause parallel to the one that the Supreme Court struck down in *Johnson*.[2] On October 26, 2016, the trial judge denied this motion, finding it was an unauthorized second or successive Section 2255 motion. Appellants filed a notice of appeal. But on July 31, 2019, Appellants and the Government jointly moved for a remand of the appeal back to the District Court so the trial judge could consider the impact of the intervening decisions of *United States v. Davis*, 139 S. Ct. 2319, 2323–24 (2019) and *United States v. Santarelli*, 929 F.3d 95 (3d Cir. 2019). We granted this motion on October 4, 2019.

On remand, Appellants ultimately advanced three arguments: First, their Section 924(c) convictions must be vacated under *Davis*. And in light of the vacatur of these sentences, the District Court should conduct a full resentencing on their other convictions. Second, their convictions on the conspiracy to murder charge must be vacated due to ineffective assistance of trial and appellate counsel. And third, they are actually innocent of the conspiracy to murder members of the U.S. military.

On August 6, 2020, the trial judge denied Appellants' petitions, rejecting each of these arguments. Most relevantly to this appeal, the trial judge declined to decide Appellants' challenge to their Section 924(c) convictions, reasoning that since their life sentences were not being challenged, there would be no practical effect of vacating the Section 924(c) sentences. The trial judge noted "as a practical matter,

---

[2] Appellants contended their reliance on *Johnson* was appropriate as it was made retroactive by the Supreme Court in *Welch v. United States*, 578 U.S. 120, 130 (2016).

8

[Appellants] will never serve their § 924(c) convictions due to their life sentences on their conspiracy to murder convictions." J.A. 18. In making this finding, the trial judge invoked the "concurrent sentence doctrine's rationale." J.A. 21. As the trial judge explained, this doctrine applies where a petitioner would remain subject to the same sentence and would not suffer any unique collateral consequences rising to the level of custody from the challenged convictions. Moreover, the trial judge found even if he were to vacate the Section 924(c) convictions, he would not need to conduct a full resentencing given their unchallenged life sentences and the fact "[t]he § 924(c) convictions had no effect on this Court's sentence as it relates to Petitioners['] conspiracy to murder convictions." J.A. 21.

With respect to the ineffective assistance of counsel claims, the trial judge examined the inquiry outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), and found Appellants failed to establish that their counsel's performance fell below an objective of standard of reasonableness. Specifically, the trial judge referenced our decision denying a certificate of appealability on Shain Duka's April 2019 Rule 60(b) motion in which we stated that the correctness of the complained-of jury instructions was "not debatable." Accordingly, counsel could not be faulted for their failure to object to these instructions. Finally, the trial judge found, even assuming Appellants could proceed on a stand-alone actual innocence claim, they would fail to meet the appropriate standard as they presented no new evidence that was not available at trial.

The trial judge issued certificates of appealability solely on the issue of whether "the concurrent sentence doctrine's

9

rationale could be applied in this case." J.A. 28. Appellants timely appealed on that question and made a joint motion to expand their certificates of appealability to include their ineffective assistance and actual innocence claims. On March 11, 2021, a panel of our colleagues denied this motion.

Appellants now advance the substance of their argument regarding the trial judge's allusion to the concurrent sentence doctrine, request we expand their certificate of appealability to include their ineffective assistance and actual innocence claims, and then proceed to make their substantive arguments regarding those claims.

II.

Appellants contend the trial judge's invocation of the "rationale" of the concurrent sentence doctrine in declining to vacate their Section 924(c) convictions was improper because their challenged Section 924(c) convictions were to run consecutively to—rather than concurrently with—their unchallenged life sentences and because the Section 924(c) convictions carried unique collateral consequences.

The concurrent sentence doctrine allows a court the "discretion to avoid resolution of legal issues affecting less than all of the counts in an indictment where at least one count will survive and the sentences on all counts are concurrent." *McKie*, 112 F.3d at 628 n.4. The concept underlying this doctrine is simple: there is no use expending the limited resources of the litigants and the judiciary reviewing a conviction where, regardless of the outcome, the defendant will remain subject to the same sentence. *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986). This common-sense

10

approach preserves valuable and limited judicial resources for deciding those cases which might actually result in practical changes for the litigants. *Id.* ("The practice is eminently practical and conserves judicial resources for more pressing needs."); *see also Benton v. Maryland*, 395 U.S. 784, 799 (1969) (White, J., concurring) (noting the concurrent sentence doctrine is rooted in concerns "of fairness to other litigants" because it enables the more efficient use of judicial resources); *Kassir v. United States*, 3 F.4th 556, 565 (2d Cir. 2021) (affirming invocation of concurrent sentence doctrine because "[w]e reserve our judgment only for issues that, once resolved, have some practical effect").

We review a trial judge's application of the concurrent sentence doctrine for abuse of discretion. *See Barnes v. United States*, 412 U.S. 837, 848 n.16 (1973) (describing what would come to be known as the concurrent sentence doctrine as a "discretionary matter"); *McKie*, 112 F.3d at 628 n.4 (describing the concurrent sentence doctrine as discretionary). Accordingly, we will only reverse the decision of the trial judge if "no reasonable person would adopt the district court's view." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)).

A.

Appellants advance two potential justifications for overturning the trial judge's decision. Neither is persuasive.

First, Appellants contend the use of this doctrine was improper as the challenged sentences were to run consecutively to—rather than concurrently with—their

unchallenged life sentences. In fact, Appellants were sentenced to 360 months' imprisonment on their Section 924(c) convictions, to run consecutively to their life sentences. But in the context of a sentence to run consecutively to an unchallenged life sentence, that is a distinction without a difference. Because their life sentences are unchallenged, even a complete vacatur of their Section 924(c) sentences will not reduce the time Appellants must serve in prison. Indeed, there appears to be no dispute about this fact. Accordingly, the same practical concern underlying the concurrent sentence doctrine is present here, despite any semantic distinction in the posture of their sentences. Appellants assert there are no judicial resources to be conserved, as there was "nothing left to decide." Appellants' Br. 7. But this is belied by their contention that vacatur should result in a full resentencing. Particularly in a case such as this, where the original sentencing occurred over a decade ago, "[t]he social costs of retrial or resentencing are significant, and the attendant difficulties are acute." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998). At bottom, Appellants' request for the trial court to vacate their Section 924(c) sentences will result in the expenditure of the court and parties' time and resources, with no possibility for any cognizable change for the Appellants, even if their challenge proved successful.

Accordingly, it was not an abuse of discretion for the trial judge to preserve judicial resources by declining to consider the substance of Appellants' constitutional challenge under the logic of the concurrent sentence doctrine. *See Kassir*, 3 F.4th at 569 (applying concurrent sentence doctrine to decline review of challenged sentence where the petitioner was subject to unchallenged life sentences); *Ruiz v. United States,* 990 F.3d 1025, 1033 (7th Cir. 2021) (applying the "same

considerations" that underlie the concurrent sentence doctrine to decline review of sentence where petitioner was subject to seven unchallenged consecutive life sentences); *Oslund v. United States*, 944 F.3d 743, 746 (8th Cir. 2019) (finding no error in district court's application of the concurrent sentence doctrine given an unchallenged consecutive life sentence).

Second, Appellants contend the concurrent sentence doctrine is inapposite because their Section 924(c) convictions subject them to unique collateral consequences. Specifically, they note the $100 special assessment imposed as a result of their Section 924(c) convictions.[3]

While such a special assessment may serve as a basis for an appellant to maintain a stake in attacking a conviction on direct appeal, as explained by the Supreme Court in *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam), the same is not true when making a collateral attack under Section 2255. Unlike a direct appeal, the crux of a habeas proceeding is a

---

[3] Appellants imply the Government bears the burden of showing a lack of collateral consequences. Appellants are incorrect. As we have repeatedly stated, if the petitioner argues the concurrent sentencing doctrine is inappropriate because he is subject to unique collateral consequences, the petitioner bears the burden of identifying those unique collateral consequences. *See Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 104 (3d Cir. 2017) (affirming application of concurrent sentence doctrine because petitioner "identifies no such [collateral] consequences in his case, even as he emphasizes this exception to the concurrent sentencing doctrine"); *United States v. Ross*, 801 F.3d 374, 382–83 (3d Cir. 2015) (similar).

claimed right of relief from "custody." *United States v. Ross*, 801 F.3d 374, 379 (3d Cir. 2015); 28 U.S.C. § 2255(a). Custody is a restraint on individual liberty that is "(1) severe, (2) immediate (*i.e.*, not speculative), and (3) not shared by the public generally." *Ross*, 801 F.3d at 379. Accordingly, if a petitioner does not claim relief from a severe restraint on his individual liberty, he cannot maintain a federal habeas action. *Id.* This differs from a direct appeal, which "allows for a frontal attack on a conviction, a sentence, or both," and is not subject to this same limitation. *Kassir*, 3 F.4th at 565.

This distinction is at the core of our decision in *Ross* and explains why Appellants' reliance on *Ray* is misplaced. In *Ray,* the Supreme Court addressed the application of the concurrent sentence doctrine in the context of a direct appeal and not with its application in a habeas action. 481 U.S. at 737. And as we explained in *Ross*, "[t]he applicability of the concurrent sentence doctrine on direct appeal is . . . distinct from the question presented here, on collateral review under [S]ection 2255." 801 F.3d at 382. Indeed, in *Ross*, we rejected the precise argument Appellants advance here, finding "the monetary component of a sentence is not capable of satisfying the 'in custody' requirement of federal habeas statutes." *Id.* at 380. Consequently, the $100 special assessment applied under their Section 924(c) sentences is not a cognizable basis for relief in this Section 2255 proceeding. *See Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 104 (3d Cir. 2017) ("[B]ecause collateral attacks can challenge only a prisoner's custody, special assessments are not reviewable in habeas corpus proceedings."); *see also Ryan v. United States*, 688 F.3d 845, 849 (7th Cir. 2012) ("A collateral attack under § 2241, § 2254, or § 2255 contests only custody, however, and not fines or special assessments.").

14

In sum, the trial judge's invocation of the rationale of the concurrent sentence doctrine was proper given Appellants' unchallenged life sentences and the lack of any unique cognizable collateral consequences stemming from Appellants' Section 924(c) convictions.

## III.

Appellants also request we reconsider the decision of the motions panel and expand their certificates of appealability to allow them to advance their ineffective assistance of counsel and actual innocence claims.

A merits panel can, in its discretion, expand the certificate of appealability should the panel deem it necessary. *Villot v. Varner*, 373 F.3d 327, 337 n.13 (3d Cir. 2004). But a merits panel should "not lightly overturn a decision made by a motions panel during the course of the same appeal." *Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 292 (3d Cir. 2007). And we will decline to do so in this case, as Appellants do not provide any compelling reason to revisit the decision of the motions panel.

Apart from cosmetic changes, Appellants present us with a nearly identical brief to the one they filed with the motions panel. Appellants' minor alterations, such as changing "Petitioners" to "Appellants" and reversing the order of the presentation of the issues, do nothing to convince us the motions panel erred in its decision. Appellants' one substantive addition, an analogy to the January 6, 2021 United States Capitol riot, fares no better. Despite claiming it is "instructive to compare this case to what occurred at the Capitol on January 6, 2021," Appellant's Br. 36, Appellants

make no effort to explain what about this comparison or their lengthy quotation from Wikipedia would justify exercising our discretion to expand their certificates of appealability.

In sum, we will decline to exercise our discretion to expand the certificate of appealability to incorporate Appellants' ineffective assistance and actual innocence claims. Accordingly, we will decline to consider the merits of these issues. *See* 3d Cir. L.A.R. 22.1(b) ("[T]he court of appeals will not consider uncertified issues unless appellant first seeks, and the court of appeals grants, certification of additional issues."); *Villot*, 373 F.3d at 337 n.13 ("We may not consider issues on appeal that are not within the scope of the certificate of appealability.").

IV.

For the foregoing reasons, we will affirm the district court's judgment in full.[4]

---

[4] Because we affirm the District Court's decision, we need not address Appellants' request that we direct any further proceedings on remand to a different trial judge.