*Al-'Owhali v. United States*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2021
No. 20-3174

MOHAMED RASHED DAOUD AL-'OWHALI,
*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee*.[*]

---

On Appeal from the United States District Court
for the Southern District of New York

---

SUBMITTED: FEBRUARY 28, 2022
DECIDED: JUNE 8, 2022

---

Before:     WALKER, MENASHI, and LEE, *Circuit Judges*.

In 1998, Petitioner-Appellant Mohamed Rashed Daoud Al-'Owhali participated in the bombings of American embassies in Africa. The attacks killed 224 people. In 2001, he was convicted of 266

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

counts and sentenced to 264 concurrent life terms of imprisonment, to be followed by a consecutive 10-year term of imprisonment, in turn to be followed by a consecutive 30-year term of imprisonment. He later filed a motion under 28 U.S.C. § 2255 to vacate his conviction for using an explosive device during a crime of violence in violation of 18 U.S.C. § 924(c). That conviction yielded the 30-year sentence that is to follow his other terms of imprisonment. Al-'Owhali argues that the conviction's predicate offense no longer qualifies as a "crime of violence" following *United States v. Davis*, 139 S. Ct. 2319 (2019).

We decline to consider Al-'Owhali's claim because, under the concurrent sentence doctrine, the claim need not be reviewed. That doctrine allows a court to decline to review a challenged sentence when another is valid and carries the same or greater duration of punishment, such that the overall sentence would not change even if the challenge were successful. We hold the doctrine applies when, as in this case, a prisoner challenges a conviction and resulting sentence that runs consecutively to one or more unchallenged life sentences.

———————

Mohamed Rashed Daoud Al-'Owhali, pro se, Marion, IL, *for Petitioner-Appellant*.

Stephen J. Ritchin, Won S. Shin, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Respondent-Appellee*.

———————

MENASHI, *Circuit Judge*:

On August 7, 1998, Petitioner-Appellant Mohamed Rashed Daoud Al-'Owhali and a team of al Qaeda operatives conducted simultaneous bombings of the American embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania. The attacks killed 224 people—including twelve Americans—and wounded thousands. Al-'Owhali was arrested, transported to the United States, and indicted. In 2001, a federal jury convicted Al-'Owhali of 266 counts for his role in the bombings. The district court subsequently sentenced Al-'Owhali to 264 concurrent life terms of imprisonment, to be followed by a consecutive 10-year term of imprisonment, in turn to be followed by a consecutive 30-year term of imprisonment. He has since been serving his 264 life sentences.

In this appeal, Al-'Owhali challenges only one of his 266 convictions. Al-'Owhali seeks to vacate his conviction for using an explosive device during a crime of violence in violation of 18 U.S.C. § 924(c), which yielded the 30-year sentence that is to follow his other terms of imprisonment. He asserts that the conviction's predicate offense no longer qualifies as a "crime of violence" following the decision of the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019). We need not and do not reach the merits of this challenge.

We hold that a court may exercise its discretion under the concurrent sentence doctrine to decline to review the merits of a claim on collateral review when the challenged conviction's sentence runs consecutively to one or more unchallenged life sentences. We exercise such discretion here and decline to review Al-'Owhali's claim for two reasons. First, Al-'Owhali's claim will not afford him any actual

3

sentencing relief. Because he does not challenge his 264 life sentences, even a complete vacatur of his § 924(c) conviction will not reduce the time he serves in prison. Second, leaving the § 924(c) conviction unreviewed will not yield any adverse collateral consequences.

Accordingly, we affirm the judgment of the district court without prejudice to Al-'Owhali renewing his claim in the event that he is later authorized to challenge the validity of his 264 life sentences.

**BACKGROUND**

**I**

Al-'Owhali joined al Qaeda in 1996 and volunteered to participate in a mission. He was tasked with bombing the American embassy in Nairobi, Kenya. Al-'Owhali filmed a video claiming responsibility for the bombing in advance, and he then traveled to Nairobi to carry it out. Between his arrival on August 2, 1998, and the attack on August 7, 1998, Al-'Owhali and his co-conspirators finalized the logistics of the attack, surveilled the embassy, and oversaw the wiring of the bomb.

On August 7, 1998, Al-'Owhali was the sole passenger in the truck that delivered the bomb to the embassy. As the truck approached the embassy, Al-'Owhali exited and threw a stun grenade at the embassy guards to clear a path for the truck. After the bomb was in place, Al-'Owhali fled and the bomb detonated.[1] The resulting explosion destroyed part of the embassy and an adjacent building, killing 213 and wounding thousands. Shortly thereafter, American

---

[1] The bomb detonated nearly simultaneously with the bomb in the attack on the American embassy in Tanzania, which killed eleven people.

4

and Kenyan authorities arrested Al-'Owhali and transported him to the United States.

On May 29, 2001, a jury in the Southern District of New York convicted Al-'Owhali of 266 counts for his role in the bombings, including 213 counts of murder during an attack on a federal facility in violation of 18 U.S.C. § 930(c), one count of destroying federal property with explosives resulting in death in violation of 18 U.S.C. § 844(f)(3), and one count of using an explosive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).[2] The § 844(f)(3) conviction served as the predicate crime of violence for the § 924(c) conviction.

Because the jury did not unanimously conclude that Al-'Owhali's capital convictions warranted the death penalty, the district court (Sand, J.) sentenced Al-'Owhali to the terms of imprisonment mandated by statute. Al-'Owhali received 264 concurrent life sentences, to be followed by a consecutive 10-year term of imprisonment, which in turn would be followed by a consecutive 30-year term of imprisonment for his § 924(c) conviction.

---

[2] Al-'Owhali was also convicted of conspiracy to murder U.S. nationals, officers, and employees in violation of 18 U.S.C. §§ 1114, 1116-17, and 2332(b); conspiracy to use weapons of mass destruction against U.S. nationals in violation of 18 U.S.C. §§ 2332a(a)(1) and (a)(3); conspiracy to damage or destroy U.S. property in violation of 18 U.S.C. § 844(n); murder and attempted murder of U.S. employees and internationally protected persons in violation of 18 U.S.C. §§ 1111, 1114, and 1116; use and attempted use of weapons of mass destruction against U.S. nationals in violation of 18 U.S.C. §§ 2332a(a)(1) and (a)(3); and use of an explosive device in the commission of a felony in violation of 18 U.S.C. § 844(h)(1)-(2).

We affirmed Al-'Owhali's convictions and sentences on direct appeal.[3]

## II

This appeal arises from the interaction of Al-'Owhali's § 924(c) conviction and the decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).[4] In *Davis*, the Supreme Court held that the residual clause of 18 U.S.C. § 924(c)(3)(B)—which defined "crime of violence" to include any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"—was unconstitutionally vague. 139 S. Ct. at 2336. *Davis* followed two other decisions in which the Court held similar language to be impermissibly vague. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1210-11 (2018) (addressing the federal criminal code's definition of "crime of violence" in 18 U.S.C. § 16(b)); *Johnson v. United States*, 576 U.S. 591, 593-94 (2015) (addressing the

---

[3] *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008); *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 157 (2d Cir. 2008) (denying Fourth Amendment challenges); *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 177 (2d Cir. 2008) (denying Fifth Amendment challenges). Al-'Owhali did not challenge his § 924(c) conviction on direct appeal.

[4] Al-'Owhali previously filed a different 28 U.S.C. § 2255 motion but voluntarily withdrew it before the district court issued a decision on its merits. *See* Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence of Petitioner-Appellant at 2-3, *Al-'Owhali v. United States*, No. 20-CV-0832 (S.D.N.Y. Jan. 29, 2020), ECF No. 1.

Armed Career Criminal Act's definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(ii)).[5]

Following *Davis*, Al-'Owhali filed a motion pursuant to 28 U.S.C. § 2255 to vacate his § 924(c) conviction on the ground that the predicate § 844(f) conviction for using an explosive device to destroy federal property no longer qualifies as a "crime of violence" under the statute. Al-'Owhali argued that vacatur of the § 924(c) conviction would warrant vacatur of and de novo resentencing on his 265 other convictions.

The district court (Kaplan, J.) denied Al-'Owhali's § 2255 motion and declined to issue a certificate of appealability. *See Al-'Owhali v. United States*, No. 20-CV-0832, 2020 WL 4194635, at *2 (S.D.N.Y. July 21, 2020). The district court held that Al-'Owhali had cause to bring his procedurally defaulted claim because he was convicted "long before *Davis* was decided" and an earlier challenge based on § 924(c)'s definition of "crime of violence" would have "failed at the time under controlling Second Circuit precedent." *Id.* at *1 & n.2 (citing *United States v. Barrett*, 903 F.3d 166, 175 (2d Cir. 2018)). However, the district court held that Al-'Owhali failed to show "the actual prejudice required to overcome his procedural default." *Id.* at *1. A panel of this court granted Al-'Owhali's motion for a certificate of appealability.

---

[5] The Court has explicitly held that *Johnson* announced a new substantive rule of constitutional law that applies retroactively on collateral review. *See Welch v. United States*, 578 U.S. 120, 135 (2016). It has not done so for *Dimaya* or *Davis*.

7

## DISCUSSION

We review de novo a district court's denial of a motion under § 2255 to vacate, set aside, or correct a sentence. *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021). A § 2255 motion challenges the prisoner's being in custody, and relief may be afforded only when the prisoner claims "the right to be released." 28 U.S.C. § 2255(a).[6] If the challenged sentence "was not authorized by law," we will correct it "as may appear appropriate." *Id.* § 2255(b).

The government argues that we should decline to review Al-'Owhali's claim pursuant to the concurrent sentence doctrine.[7] We therefore consider whether a court has discretion under that doctrine to decline to review a claim on collateral review when the challenged conviction's sentence runs consecutively, not concurrently, to one or more unchallenged life sentences. We conclude that the concurrent sentence doctrine allows for such discretion, and we exercise that discretion to decline to review Al-'Owhali's claim here.

---

[6] "[T]he use of ['custody'] in federal habeas statutes is 'designed to preserve the writ … as a remedy for severe restraints on individual liberty.'" *Kassir*, 3 F.4th at 566 (emphasis omitted) (quoting *United States v. Ross*, 801 F.3d 374, 379 (3d Cir. 2015)); *see also Kaminski v. United States*, 339 F.3d 84, 91 (2d Cir. 2003). Challenges to noncustodial punishments do not qualify for such collateral review. *See United States v. Rutigliano*, 887 F.3d 98, 105 (2d Cir. 2018); *United States v. Thiele*, 314 F.3d 399, 401-02 (9th Cir. 2002).

[7] The government also argues that (1) Al-'Owhali procedurally defaulted his challenge to the § 924(c) conviction, and (2) § 844(f) qualifies as a "crime of violence" under the elements clause of § 924(c)(3)(A) and therefore may serve as a predicate offense even after *Davis*. We need not reach these issues in this appeal.

8

# I

Under the concurrent sentence doctrine, a court may decline to consider a challenge to a "conviction for which an appellant's sentence runs concurrently with that for another, valid conviction." *United States v. Vargas*, 615 F.2d 952, 956 (2d Cir. 1980); *see also Duka v. United States*, 27 F.4th 189, 194 (3d Cir. 2022) ("The concurrent sentence doctrine allows a court the discretion to avoid resolution of legal issues affecting less than all of the counts in an indictment where at least one count will survive and the sentences on all counts are concurrent.") (internal quotation marks and citation omitted). The doctrine "authorizes a court to leave the validity of one concurrent sentence unreviewed when another is valid and carries the same or greater duration of punishment." *United States v. Charles*, 932 F.3d 153, 155 (4th Cir. 2019).

The doctrine is a "rule of judicial convenience," *Kassir*, 3 F.4th at 561 (quoting *Benton v. Maryland*, 395 U.S. 784, 791 (1969)), that conserves judicial resources when, "regardless of the outcome, the prisoner will remain in jail for the same length of time," *Benton*, 395 U.S. at 799 (White, J., concurring). As a "species" of "harmless-error analysis," it allows a court to "avoid unnecessary adjudication of issues and unnecessary pronouncements of law" by reserving "judgment only for issues that, once resolved, have some practical effect." *Kassir*, 3 F.4th at 564-65.

The doctrine does not provide unlimited discretion. In *Ray v. United States*, the Supreme Court held that three convictions were not concurrent because each imposed a separate monetary penalty; given that each conviction affected the petitioner's total "liability to pay," a

court could not apply the doctrine to decline to review one of those convictions. 481 U.S. 736, 737 (1987) (per curiam). Because "all federal convictions carry a mandatory special assessment, *Ray* is understood to have 'abolished the concurrent sentence doctrine for direct review of federal convictions.'" *Dhinsa v. Krueger*, 917 F.3d 70, 76 n.4 (2d Cir. 2019) (internal citation and alteration omitted) (quoting 7 Wayne R. LaFave et al., Crim. Proc. § 27.5(b) (4th ed. 2015)). We nevertheless continue to apply the doctrine "in direct appeals where a defendant challenges only the length of one concurrent sentence, rather than the legality of a conviction underlying that sentence," consistent with "the more general principle that a sentencing error is not prejudicial where, in the absence of the error, the defendant would have received the same aggregate term of imprisonment on multiple counts." *Kassir*, 3 F.4th at 562-63.

We recently held that the concurrent sentence doctrine remains available in a collateral challenge to a conviction or sentence under § 2255. *Id.* at 564, 566. Other circuits have reached similar conclusions. *See Duka*, 27 F.4th at 195-96 (challenging a conviction); *Oslund v. United States*, 944 F.3d 743, 746 (8th Cir. 2019) (challenging a sentence); *Charles*, 932 F.3d at 162 (challenging a sentence); *Ryan v. United States*, 688 F.3d 845, 848-49 (7th Cir. 2012) (challenging a conviction). A collateral attack under § 2255 "presents a wholly different context in which a court may grant relief" than direct appeal. *Kassir*, 3 F.4th at 566. While "[a] direct appeal allows for a frontal attack on a conviction, a sentence, or both," *id.* at 565, a collateral attack is limited to a "claimed right of relief from 'custody,'" *Duka*, 27 F.4th at 195. Relief from "fines, special assessment fees, restitution, and other noncustodial punishments" might result from "a defendant's

successful collateral attack on a conviction" but "cannot themselves serve as bases for collateral relief." *Kassir*, 3 F.4th at 566.

## II

In light of our precedent, we hold that the concurrent sentence doctrine applies to a collateral challenge to a conviction for which the sentence runs consecutively to one or more unchallenged life sentences. We have discretion to apply the doctrine when, as in this case, (1) the collateral challenge will have no effect on the time the prisoner must remain in custody and (2) the unreviewed conviction will not yield additional adverse collateral consequences.

## A

When a prisoner challenges a sentence to run consecutively to an unchallenged life sentence, even a complete vacatur of the challenged sentence will not "reduce the time he is required to serve" in prison. *Id.* at 561 *(*quoting *Oslund*, 944 F.3d at 746). Whether the challenged sentence runs consecutively or concurrently to the unchallenged life sentence "is a distinction without a difference." *Duka*, 27 F.4th at 194. The "same practical concern underlying the concurrent sentence doctrine is present" in both circumstances "despite any semantic distinction in the posture of the[] sentences." *Id.* at 195. For that reason, applying the concurrent sentence doctrine in cases such as this one equally allows a court to "reserve our judgment only for issues that, once resolved, have some practical effect." *Kassir*, 3 F.4th at 565.

Al-'Owhali is currently serving 264 concurrent life sentences, all of which we affirmed on direct appeal and none of which he challenges here. Al-'Owhali challenges only his § 924(c) conviction,

11

which carries a 30-year sentence that runs consecutively to all of his 264 life sentences and another 10-year consecutive sentence. Vacatur of his § 924(c) conviction will have no effect on the time he must serve in prison. Therefore, entertaining Al-'Owhali's challenge would "result in the expenditure of the court and parties' time and resources, with no possibility for any cognizable change for" Al-'Owhali "even if [his] challenge [were] successful." *Duka*, 27 F.4th at 195. The costs would be significant, especially in light of Al-'Owhali's contention that vacatur of his § 924(c) conviction should occasion a resentencing on all of his other counts. Two decades removed from the original sentencing, "the social costs of retrial or resentencing are significant, and the attendant difficulties are acute." *Id.* (alteration omitted) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)).

**B**

Application of the concurrent sentence doctrine—that is, leaving the § 924(c) conviction in place—will not occasion adverse collateral consequences for Al-'Owhali. "In this context, it has been said that the court must 'foresee *with reasonable certainty* that the defendant will suffer no adverse collateral consequences' from the court's decision to leave his conviction and sentence unreviewed." *Kassir*, 3 F.4th at 561 (alteration omitted) (quoting *Charles*, 932 F.3d at 155). At the same time, the court must "eliminate[] from the forward-looking analysis unrealistic speculation" because "if 'highly speculative adverse collateral consequences' were to bar courts from applying the concurrent sentence doctrine, there would be nothing left to 'this useful rule.'" *Charles*, 932 F.3d at 160 (quoting *Eason v. United States*, 912 F.3d 1122, 1124 (8th Cir. 2019)).

In *United States v. Vargas*, we proposed five factors to consider when inquiring into "the collateral consequences of affirming the conviction on the basis of the [concurrent sentence] doctrine, and whether they are of sufficient immediacy and impact to warrant its inapplicability." 615 F.2d at 959. The *Vargas* factors examine the effect of an unreviewed conviction on the "petitioner's eligibility for parole, the future application of recidivist statutes for a future offense by the petitioner, the petitioner's credibility in future trials, the possibility of pardon, and societal stigma of a conviction." *Kassir*, 3 F.4th at 568 (citing *Vargas*, 615 F.2d at 959-60). The presence of any factor is sufficient to justify review. *See Vargas*, 615 F.2d at 959-60.

In this case, there is "no meaningful possibility" that the unreviewed conviction will subject Al-'Owhali to a "substantial risk of adverse collateral consequences." *Kassir*, 3 F.4th at 568. First, the unreviewed conviction will have no effect on Al-'Owhali's future parole eligibility because his unchallenged life sentences are all without parole. *See United States v. Delgado*, 971 F.3d 144, 159 (2d Cir. 2020) ("Since there is no parole in the federal system, [the] sentence is effectively the same as a life-without-parole sentence in state court systems."). Second, it is unlikely that Al-'Owhali will be subject to a "recidivist statute for a future offense," such that the unreviewed conviction could result in an "increased sentence," because Al-'Owhali is already in prison for life. *Kassir*, 3 F.4th at 568 (quoting *Rutledge v. United States*, 517 U.S. 292, 302 (1996)). Third, the unreviewed conviction is unlikely to be used to impeach his character at a future trial or affect his chances for a potential pardon because he remains convicted on 265 other counts for his role in the Nairobi bombing. Fourth, the unreviewed conviction is unlikely to subject

Al-'Owhali to a "societal stigma," "especially in comparison to the stigma already carried by his [unchallenged] conviction[s]" for engaging in terrorism that killed over 200 people. *Id.*

## C

Other circuits have applied the concurrent sentence doctrine in similar circumstances. Most recently, the Third Circuit affirmed a district court's reliance on the concurrent sentence doctrine to decline to consider a § 2255 challenge to a § 924(c) conviction that ran consecutively to unchallenged life sentences. *See Duka*, 27 F.4th at 190-91, 196 ("[T]he trial judge's invocation of the rationale of the concurrent sentence doctrine was proper given Appellants' unchallenged life sentences and the lack of any unique cognizable collateral consequences stemming from Appellants' Section 924(c) convictions."). Similarly, the Eighth Circuit affirmed a district court's exercise of discretion to decline to review the validity of a life sentence that ran before a different and consecutive life sentence. *Oslund*, 944 F.3d at 748. The Eighth Circuit "agree[d] with the district court's determination that [the prisoner's] consecutive life sentences are the functional equivalent of concurrent life sentences," *id.* at 748 n.3, and that "resentencing on [one life sentence] would not reduce the time [the prisoner] is required to serve because it would not affect … his [other] life sentence," *id.* at 746.

The Seventh Circuit has effectively agreed with the approach of these circuits. In *Ruiz v. United States*, the government urged the court to apply the doctrine under similar circumstances. 990 F.3d 1025, 1029

14

(7th Cir. 2021).[8] The court considered the doctrine "by analogy," concluding that "the same considerations of futility, speculation, and preservation of judicial resources" applied. *Id.* at 1033. The Seventh Circuit said that while it was declining to engage in review that "would lead to no practical or concrete sentencing relief," it was "not adopting a 'consecutive sentence doctrine' analogous to the concurrent sentence doctrine" because challenges to consecutive sentences ordinarily could result in such relief. *Id.*[9]

## III

We conclude as we did in *Kassir* by acknowledging that, while "speculative, unlikely, and remote," it is not impossible that someday "a new rule of constitutional law or newly discovered evidence" might invalidate Al-'Owhali's life sentences and thereby render consequential his challenge to his 30-year consecutive sentence. 3 F.4th at 569. Given that possibility, we affirm the district court's

---

[8] A federal jury convicted Jesus Ruiz of, *inter alia*, three counts of using a firearm during a crime of violence in violation of § 924(c). *Ruiz*, 990 F.3d at 1028. Ruiz received seven life sentences and one 10-year sentence to run concurrently, and an additional 45-year sentence on the § 924(c) convictions to run consecutively. *Id.* Ruiz filed a § 2255 motion asserting that § 924(c)'s residual clause was unconstitutionally vague and that the predicate offenses for the § 924(c) convictions were not "crimes of violence." *Id.*

[9] The Seventh Circuit reasoned that, "in most circumstances involving consecutive sentences, a prisoner would suffer tangible prejudice if an invalid conviction remained on his record because he would be required to serve a longer actual prison term." *Ruiz*, 990 F.3d at 1033-34. True enough, but this concern does not apply when life sentences remain unchallenged and "there is no substantial possibility that the unreviewed sentence will adversely affect" the prisoner. *Charles*, 932 F.3d at 155 (emphasis omitted).

judgment without prejudice to Al-'Owhali renewing his *Davis* claim "if and when" he can bring "a timely and colorable challenge to … his [264] concurrent life sentences." *Id.* To be clear, Al-'Owhali "has already unsuccessfully challenged his other convictions, and we do not mean to suggest that such a challenge can be mounted," but "in the event that something in the future changes the validity of [his] life sentences," a court may consider his *Davis* claim at that time. *Id.* (noting that in such a future challenge a court would evaluate "the claim's timeliness by reference to when he raised it in the present action" and allow the government "to raise any other defenses that it might wish to advance").

## CONCLUSION

The judgment of the district court is affirmed without prejudice to Al-'Owhali renewing the claim if he is authorized to challenge the validity of his life sentences in the future.